INDUSTRIAL SAVINGS AND LOAN COMPANY and GEORGE C. VAN TUYL, JR., superintendent of banks of the State of New York, complainants-respondents,

*v.*

GRACE FRANCES PLUMMER et al., defendants-appellants.

[Argued June term, 1914. Decided December 1st, 1914.]

The defendants desiring to purchase a plot of ground, with a building thereon, at Grantwood, negotiated for over three months with the agent of the vendor, and at the end of that period accepted title subject to first and second mortgages. They resided on the premises without complaint for some years, paying interest upon both mortgages, and reducing the principal of the second, until the bill in this case was filed to foreclose the latter mortgage, when they alleged fraud as a defence by reason of the fact that the agent had excessively valued the property at the time of sale. Ample opportunity to examine the property and verify the representations of value had been given prior to the purchase.—*Held*, that the opportunity of examining the property and its value, and of verifying the representations made, cast a duty upon the defendants of exercising reasonable diligence in their own behalf upon estimates of value, which were open to their observation, judgment and investigation, and in the absence of actual fraud, relief upon that ground alone will not be afforded in equity. In such a situation the doctrine of *caveat emptor* applies.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson.

*Mr. J. Boyce Smith* and *Mr. Frederick P. Schenck,* for the respondents.

*Mr. Frank G. Turner,* for the appellants.

The opinion of the court was delivered by

MINTURN, J.

The bill was filed to foreclose a second mortgage executed and delivered under the following circumstances: The Columbia

Investment and Real Estate Company developed a tract of land on the Palisades known as Grantwood, in the county of Bergen. It expended a large sum of money in building streets, erecting houses and constructing the ordinary municipal improvements preparatory to advertising and exploiting the location as a desirable site for homes.

The houses and lots were sold according to a schedule of prices, depending upon the site and the character of the building. The defendants purchased three lots, upon which was located an eight-room cottage. The intermediary was an agent of the company, whose efforts to bring about a sale to defendants were instituted about a month prior to its consummation.

Upon more than one occasion during the interval the defendant Grace F. Plummer visited the place, with her husabnd and friends, and familiarized herself with the location and its inherent merits and disadvantages, as well as its financial value in the real estate market. She declined to purchase the building and two of the lots for $14,500, but after discussing the subject with her husband, offered to purchase the plot in question for $13,000. The offer being accepted, she paid $1,000 in cash and agreed to take the property subject to a first mortgage of $7,500 held by the New York Mortgage Company, and to execute a second mortgage for the difference of $4,500.

The second mortgage was made to one Mathews, who is conceded to have been an employe and dummy of the complainant. He subsequently assigned the mortgage to the complainant company, which paid the face thereof to the Columbia company.

Thereafter defendants continued to make the payments on account of principal and interest, provided for in the second mortgage, for a period of nearly four years.

These payments were divided so as to cover interest on the first and second mortgages, and a reduction of principal upon the second mortgage, and continued until March 29th, 1912, when they ceased. At the trial there was found to be due, upon the second mortgage for interest and principal, $4,908.59.

The answer of the defendants alleges that at the time of the sale the value of the property was misrepresented to the defendants by the agents of the Columbia company, who conspired

with the New York Mortgage Company and the complainant, the Industrial company, to misrepresent the value of the property, and practically to cheat and defraud the defendants into purchasing for $13,000 property which in reality was of no greater value than $6,000. Upon the truth of this allegation the defendants insist upon an abatement of the mortgage in suit to accord with the true value of the property.

The learned vice-chancellor, after consideration of the testimony, advised a decree in favor of the complainants. Our examination of the case has led us to concur in that view.

The fundamental inquiry is whether the testimony presents a case of fraud and imposition upon these defendants clear enough to warrant the court in practically annulling, *pro tanto,* their sealed written instrument, solemnly executed. Without discussing the subsidiary questions, whether upon a mere allegation of fraud in an answer, without any attempt to compel the appearance of the alleged principal fraud-doer, the Columbia company by cross-bill, such a judicial inquiry may be had, we are satisfied that the conduct which is alleged in this answer to be fraudulent upon the part of the agents of the Columbia company was not of the questionable quality which the law characterizes as fraudulent, for the purpose of annulling a legal instrument. A glance at the situation of the parties will evince this.

For months the defendants had been negotiating with the agents of the Columbia company. No relation of confidence existed between them, so that during the interval between their negotiations and the execution and delivery of the deed, the defendants were free to verify any representations or statements as to value which the agent had made. They examined the property, and its entire environment, and no effort, artifice or subterfuge seems to have been employed to pervert their judgment or becloud their sense of observation and discernment. In this situation they were dealing at arms'-length. Speaking of the relative duties of parties in such a posture, Chancellor Kent says: "The common law affords to everyone reasonable protection against fraud and dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence

and folly, or a careless indifference to the ordinary and accessible means of information. Every person reposes at his peril in the opinion of others, when he has equal opportunity to form and exercise his own judgment. *Simplex commendatio non obligat."* *2 Kent Com. 485; Davis* v. *Meeker, 5 Johns.* (*N. Y.*) *354.*

"Courts of equity, like courts of law, do not aid parties who will not use their sense and discretion upon matters of this sort." *Willard Eq. Jur. 152.*

Under such circumstances, the doctrine of *caveat emptor* is equally applicable at law and in equity. *Willard Eq. Jur. 152.* Lord Campbell in *Duke of Beaufort* v. *Neeld, 12 Cl. & Fin. 248.*

The application of these fundamental principles is illustrated by the following cases in our own jurisdiction: *Miller* v. *Gregory, 16 N. J. Eq. 275; Wise* v. *Fuller, 29 N. J. Eq. 258; Conlan* v. *Roemer, 52 N. J. Law 53; Hallinger* v. *Zimmerman, 59 N. J. Eq. 644.*

But the equitable status of these defendants is further complicated by the fact that for three years and over they occupied the mortgaged premises, and continued so to do at the time of the trial, and until this bill was filed, and during that period made no claim and uttered no protest to fortify themselves in the attitude they now take as the alleged victims of fraud-doers. Such a complacent attitude is inconsistent with their present claim and does not enlist the favorable consideration of a court of conscience.

The court of chancery will refuse its aid, not merely to a party who fraudulently misrepresents his title, but also to one who remains silent when duty, candor and fair dealing require him to speak out. *Ross* v. *Elizabethtown Railroad Co., 2 N. J. Eq. 422.*

"Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; when these are wanting the court is passive and does nothing." Lord Camden in *Smith* v. *Clay, 3 B. C. C. 639,* quoted by Vice-Chancellor Green in *DeGrauw* v. *Mechan, 48 N. J. Eq. 224.*

The legal status of the banking commissioner of the State of New York, as a party complainant, was not challenged by any appropriate pleading in the case, as was done in *Hurd* v. *Elizabeth, 40 N. J. Law 218,* and the attack at this time therefore

may properly be subject to the criticism that it is urged too late. *Hoagland* v. *Supreme Council, 70 N. J. Eq. 607; 2 Mad. Ch. Pr. 281.*

But, conceding the correctness of defendants' contention. it cannot avail, since, under the circumstances presented here, the complainant corporation is entitled to a degree of foreclosure, regardless of the status possessed by the New York banking commissioner as a party to the suit.

Our examination of the remaining objections leads us to conclude that they are without merit.

Finding no error in the record, the decree of the court of chancery will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS—13.

*For reversal*—None.