This bill is to compel an exchange of properties — the defendant's property in Newark for the complainants' in and adjoining Morristown. The defendant refused to go through with the deal because, as he claims, it was falsely represented to him that the complainants' tract, an estate of about forty acres, for the most part lies in the town of Morristown, whereas only a fraction, about eight and one-half acres, is within the town limits. The sharply contested question is *Page 48 
whether the representation was made. If made, it was false, material and injurious. The defendant, his broker and his lawyer, testify to the representation, and they are met by the denials of the two complainants and their lawyer. The defendant's lawyer, Mr. Hartpence, testified that, upon the occasion when the complainants and their lawyer were in his office to execute the contract, he discovered, upon an examination of the complainants' title deed, which they there produced, that the property was not all in Morristown, as he had been given to understand by his client, and that he called his attention to it, and that after some discussion the complainants Baron and Mintz stated that only a small corner of the property was outside the town, pointing off, on a map before them, a small portion, and he says that the representations were repeated several times. This is also substantially the story of the defendant and his broker. Their testimony indicates that Mr. Baron was the spokesman, and that his co-tenant, Mintz, acquiesced. The complainants say that nothing whatever was said about location. Their stand is that there was no discussion at all of this vital point, and their lawyer, Mr. Lipis, supports them in the denial. But Mr. Lipis slipped. He had a faint recollection "that when the deed was brought to Mr. Hartpence he looked at the deed and said the property was described as Morristown and Morris township, and the question was asked — I do not remember of whom — but I think it was addressed to Mr. Mintz, one of the complainants, whether he knows how much is in Morristown and how much is within Morris township, and he said he didn't know." This admission materially supports the defense and challenges the truth of the complainants' denial that there was any discussion whatever as to location. A possible explanation of Mr. Lipis' testimony is that he may have heard only Mintz' reply, if he made the reply, and not Baron's representation. The fact that the representation was made is established.
The materiality of the representation has been established. The town's facilities, of fire and police protection and schools, add to the value of the property in the town thirty-seven and one-half per cent. over land across the line. *Page 49 
The complainants argue: Conceding the representation to have been made, and that it was false, nevertheless the defendant could have discovered the fraud by reasonable inquiry, and that therefore he is barred of his defense by the rule of caveatemptor. Where a misrepresentation is deceitfully made, as in this case, the maxim of unclean hands, not caveat emptor, rules the suit. Equity does not lend itself to accomplish a fraud, and a showing by the wrong-doer that his hoodwinked victim was careless is no inducement. Where the representation, innocently made, is a harmful misrepresentation, the applicability of the doctrine of caveat emptor depends upon whether the injured party is seeking relief or is simply resisting the effort of the wrong-doer to impose upon him. The cases cited by the complainants to support their proposition of the law — DeWitt
v. VanSickle, 29 N.J. Eq. 209 (where the doctrine of caveatemptor was applied to the plea of innocent purchaser in a creditor's suit); Industrial Savings and Loan Co. v. Plummer,84 N.J. Eq. 184 (to obtain an abatement in a foreclosure suit);Condon v. Sandhowe, 97 N.J. Eq. 204 (to rescind an executed contract), and Freedman v. Kensico Realty Co., 99 N.J. Eq. 115
(to rescind an executory contract), hold in effect that equity does not relieve against fraud detectable by the ordinary use of the senses. It will not assist the indifferent and careless. There, in three of the cases, the injured party sought the aid of the court. Here he is not. He is defending himself against the consequences of the fraud, and the court is asked to move against him on the plea of the wrong-doer that his dilemma is the result of his lack of diligence. In Redgrave v.Hurd, 20 Ch. Div. 1, Sir George Jessel, master of the rolls, answered the plea in this simple way: "If a man is induced to enter into a contract by a false representation it is not a sufficient answer to him to say `if you had used due diligence you would have found out that the statement was untrue. You had the means afforded you of discovering its falsity, and did not chose to avail yourself of them.' * * * Nothing can be plainer, I take it, on the authorities in equity, that the effect of the false representation is not got rid of on *Page 50 
the ground that the person to whom it was made has been guilty of negligence." The principal was employed in Miller v. Chetwood,2 N.J. Eq. 199. That was a case for specific performance, and Chancellor Pennington, in denying relief, said: "In the present case it is insisted that the quantity of land was not material; that the purchaser bought by the lot or parcel, and not by the acre; and that, as the land was before his eyes, and subject every day to his observation, he could not have been imposed upon. The plain answer to all this argument is, that it can furnish no excuse to the complainant for his misrepresentation. He was bound to declare the truth at any rate, and not having done so, I cannot say, according to the case in Saxton [King v.Morford, Sax. 274], that he comes here `with perfect propriety of conduct.'" The broad principle of justice in all appeals to equity for its extraordinary relief by specific performance was restated by the court of errors and appeals in Muller v. Weis,91 N.J. Eq. 321, that "the remedy invoked * * * is discretionary." It is not what must be done, but what in view of all the circumstances should be done, and where a contract is procured by fraud, and its enforcement would be a manifest injustice, the court will refuse its aid. The principle upon which In re New Jersey Refrigerator Co., 100 N.J. Eq. 537, was decided is applicable. The cases relied upon by the complainants also bear this distinction. There the injured party was charged with notice because the fraud escaped detection upon self-assumed investigation half made and inquiry half prosecuted. Here the complainants says the defendant knew, or should have known, that the representation was untrue, because there was a legend on the map before him when the contract was signed which read, "Map of property belonging to Baron and Mintz, Morris township, Morris county, New Jersey." The defendant says he did not notice, and his lawyer that he did not read it. The untruth of the legend (some of the land was in the town) may account for the distraction. They also say that he could have found out that they were misrepresenting because he saw and examined the property and its location; and to this they should add, in all fairness, that at that time he had been led to believe *Page 51 
that it was all in Morristown. There was nothing in the way of markers to indicate where the boundary line was. He could have consulted the town map, or by survey have discovered the untruth of the representation, but was he called upon, in the circumstances, when, at the last minute before executing the contract, he was told that only a small corner was in the township, to halt and take these extraordinary measures, or to submit to the expense? It was held that he was not by the court of errors and appeals in Muller v. Weis, supra. At least it does not lie in the mouths of the complainants to say that he should not have relied upon their representation.
In line with this argument, to avoid the consequences of their fraud, the complainants further contend that the defendant is not to be relieved of performance of his contract because he did not rescind promptly upon discovering the fraud. The point is not well taken. The defendant is not, as already observed, asking rescission; he is resisting specific performance, and the question is not whether he rescinded, but whether he waived the fraud and elected to be bound by the contract. The distinction is of importance. The contract was made April 12th, 1927. The defendant discovered the fraud May 9th, when Mr. Buermann consulted the town engineer and found that only one-fifth of the tract was in the town and four-fifths in the township. His lawyer was out of town until the 17th, and on the following day promptly notified the complainants' counsel, and though in the course of the correspondence between the lawyers additional reasons for not closing were given, the fraudulent representation was always assigned as one, and finally as the pivotal ground. No election to be bound by the contract can be spelled out of the letters or the defendant's conduct. They indicate disinclination if not disaffirmance. The duty of promptly rescinding a fraudulently procured contract, as pointed out by Mr. Justice Swayze inRoberts v. James in the court of errors and appeals, in83 N.J. Law 492, applies ordinarily to executed or partly executed contracts, where the injured party is required to first make restitution. Concerning executory contracts he says: "It is settled in the English courts," "that *Page 52 
unless the situation of the other party has changed to his detriment the contract continues until the party defrauded elects to avoid it, and he may keep the question open as long as he does nothing to confirm the contract. Clough v. London andNorthwestern Railway (1871), 7 L.R. Ex. 26; 41 L.J. Exch. 17;Morrison v. Universal Marine Insurance Co. (1873), 8 L.R.Ex. 197; 42 L.J. Exch. 115; United Shoe Machinery Co. of Canada
v. Brunet (1809), A.C. 330. He may even wait until action is brought against him (Clough v. London and NorthwesternRailway, ubi supra), and a plea setting up the fraud amounts to a rescission of the contract. Lawton v. Elmore, 27 L.J. Exch.141; Dawes v. Harness (L.R.), 10 C.P. 166; 44 L.J.C.P. 194;Aaron's Reefs v. Twiss (1896), A.C. 273; 65 L.J.P.C. 54, and quotes Lord Watson in the last cited case `the respondent is not seeking to rescind the contract, he is merely resisting its enforcement by the party guilty of the fraud.' On the strength of these authorities he adds: `In the case of an executory contract a refusal to perform any obligation thereunder, and the defense of an action brought thereon are all that the defrauded party can do by the way of asserting his right to disaffirm the contract, and unless his silence or delay has operated to the prejudice of the other party, he may first assert his right when his adversary first asserts his claim by action. The failure of the vendee to disaffirm the contract might sometimes prevent the vendor from selling to another, and a different question would arise from that now before us.'"
The contract will not be ordered performed and the complainants will be left to their remedy at law. The bill will be dismissed. *Page 53