Davison *v.* Rake.

WILLIAM I. DAVISON, appellant,

*v.*

ELLEN RAKE et al., respondents.

1. The general rule is, that where no time is fixed by the will for the payment of a general legacy, and it is not sooner paid, interest will begin to accrue on it at the end of a year from the testator's death.

2. The exceptions to this rule are: 1. Where a legacy is given by a debtor to his creditor in satisfaction of a debt. 2. Where the interest of a sum of money is given to the testator's minor child, or to another person to whom the testator stands in the relation of parent, and for whose support he has made no other provision; and, 3. Where a gift is made of the interest of the residue of the testator's estate to one person for life, and the principal is given over to another on the death of the life-tenant. In all these cases the legatee is entitled to interest from the testator's death.

3. The general rule was not abrogated or changed by the statute which enacts, that if no time is fixed in a will for the payment of the legacies given by it, the executor shall have one year after probate within which to pay them.

4. Interest is given on a legacy, after one year from the testator's death, not as incident to a right of action for the recovery of the legacy, but as incident to the right to the legacy.

5. Where a testator has, by the disposition he has made of his property, put his estate in such condition that his general legacies cannot be paid for many years after his death, interest will, nevertheless, begin to run on them at the end of a year from his death.

6. A decree of the orphans court should not be reversed simply on the ground of irregularity in the proceeding resulting in the decree, in a case where it is entirely clear that the appellant has suffered no injustice or loss by reason of such irregularity.

On appeal from a decree of the orphans court of Middlesex county.

*Mr. George C. Beekman,* for appellant.

*Mr. George O. Vanderbilt,* for respondents.

THE VICE-ORDINARY.

The appellant is the residuary legatee under the will of Reuben Davison, deceased. The testator died on the third day of

Davison v. Rake.

February, 1885, but his will was not admitted to probate until the ninth day of March, 1886, more than thirteen months after his death. This delay was caused by the interposition of a *caveat* against the probate of his will, and the proceedings and trial consequent thereupon. The testator gave each of six of his children the interest of $700 for life; to another child the interest of $800 for life; and to another still the interest of $1,000 for life. Each bequest is made substantially in the same words, and one may be used as a sample of all. That to his daughter Ellen reads as follows:

"I give and bequeath to my daughter, Ellen Rake, the interest of $800 during her natural life, which said money is to be divided among her heirs equally at her death."

In October, 1887, the eight legatees instituted a proceeding, by a joint petition, in the orphans court of Middlesex county, to compel the executor to pay each of them such part of the interest, on the several sums set apart for their respective use, as had, prior to that time, become due, under which proceeding the court, on the eighth day of May, 1888, made a decree, directing the executor to pay to each legatee the interest on the sum set apart for his or her use, from the third day of February, 1886, that is, from and after the end of one year from the testator's death. The appellant insists that he is aggrieved by this decree, and states, as the ground of his grievance, that, by the law as it now stands, no interest accrued on the several sums set apart for the use of the legatees until the end of a year from the day on which the will was admitted to probate, that is, that interest on the sums in question did not begin to accrue until the ninth day of March, 1887, the will not having been admitted to probate until the ninth day of March, 1886. The appellant, therefore, insists that the decree brought up for review awards to the legatees over one year's interest more than they are entitled to. No objection is made to the proceeding in the court below, on the ground that, while the rights which the legatees take under the will are several, they have attempted to enforce them by a joint proceeding or suit, and, for that reason, no consideration has been given

to the question, whether the proceeding, in that respect, is regular or not.

There can be no doubt that the general rule, regulating the payment of interest on legacies, has long been settled, and may be correctly stated as follows : That where no time is fixed by the will for the payment of a general legacy, and it is not sooner paid, interest will begin to accrue on it at the end of a year from the testator's death. *Hoagland* v. *Schenck, 1 Harr. 370; Barnes* v. *Danforth, 2 Stew. Eq. 12; Howard* v. *Francis, 3 Stew. Eq. 444; Miller* v. *Sandford, 4 Stew. Eq. 427; Welsh* v. *Brown, 14 Vr. 37; Stout* v. *Stout, 17 Stew. Eq. 479.* This rule, like most other general rules, is subject to exceptions. There are a few instances in which the legatee will be entitled to interest from the date of the testator's death. Such is the case where a legacy is given by a debtor to his creditor in satisfaction of a debt. And so where the interest of a legacy is given to the testator's minor child, or to another person to whom the testator stands in the relation of parent, and for whose support he has made no other provision, there interest will be allowed from the testator's death, as a means ·of maintenance, on the very reasonable presumption that such must have been the testator's intention. And so also where a gift is made of the interest, either of the whole of the residue, or of a particular part of it, to one person for life, and the principal is given over to another on the death of the life tenant, the life tenant is entitled to interest from the date of the testator's death. This exception rests on special considerations, and was designed to prevent the injustice which would necessarily result to the life tenant from the adoption of the general rule. To adopt the general rule in such a case would, it will be seen at a glance, result in the augmentation of the principal fund by the addition ·of one year's interest, and the remainderman would thus be given just that much more, as principal, than existed as principal at the time of the testator's death. It would deprive the life tenant ·of one year's interest, and convert that much interest into principal and take it from the life tenant and give it to the remainderman. Many of the cases sustaining these exceptions will be found cited and summarized in *Welsh* v. *Brown, supra.*

The case under consideration does not, however, fall within any of these exceptions, but must be controlled by the general rule, unless it shall be found that that rule has been abrogated by statute.   And that is the distinct ground upon which the appellant seeks to have the decree in question reversed.   The first section of the statute, giving a legatee a right to sue at law for his legacy, is subject to a proviso, which says, that if no time is fixed in the will for the payment of such legacy, the executor or administrator shall have one year after probate to pay and satisfy the legacies therein given.   *Rev. p. 581.*   This is an old statute. A few slight changes were made in its language by the revisors. As it stood immediately before the Revision, it read as follows : " That where no time in and by any last will and testament is limited for the payment of any such legacies, that then and in such case, the executor shall have the space of one year to discharge the same."   *Nix. Dig. (4th ed.) 503 § 7.*   The changes, it will be observed, have not, however, varied or altered the original meaning or purpose in the slightest degree.   The first said that the executor should have the space of one year to discharge the legacies.   Whether these words are read standing alone, or in connection with their context, they plainly mean that the person named as executor in any will should be allowed, after he became invested with the powers of his office, the space of one year within which to pay the legacies given by the will. The last says substantially the same thing, the only difference between the two being that the last says, in language slightly more apt and precise, just exactly what the first said.

Now, the argument attempted to be grounded on this statutory provision is this : That interest does not begin to run on a legacy until an action can be maintained for its recovery, and as by the statute no action can be brought for the recovery of a legacy, where no time is fixed for its payment, until the will, by which the legacy is given, has been probated a year, the effect of the statute is to abolish the original rule on this subject and establish a new one, and now, by force of the statute, no interest accrues on a legacy until a year has elapsed after the will, by which it is given, has been admitted to probate.   But this view

is evidently founded on a misconception both of the purpose of the statute and the reason lying at the foundation of the rule. The statute was not passed to take anything away from legatees, but simply to prevent them from suing for their legacies, until the executor had had sufficient time to examine into the condition of the estate, so as to see whether he could pay them without imperiling the rights of the creditors of the testator. It was not intended to alter the rule regulating the payment of interest on legacies, nor to affect the rights of legatees, except in the single particular above indicated. This is the construction which a New York statute, similar in substance, has received. In *Lawrence* v. *Embree, 3 Bradf. 364,* the court, after declaring that the statute under review had not changed the rule respecting interest, said : " If a delay in probate is to deprive the legatees of interest on their legacies, because the executor cannot be compelled to pay before a certain time has elapsed after letters issued, a premium for delay and contestation will be awarded, and great injustice sanctioned by the law." I do not think it is possible to construe the statute under consideration as the appellant insists it should be construed.

Moreover, on looking at the reason of the rule, it will be seen that interest is given after the end of one year from the testator's death, not as incident to a right of action, but as incident to the legacy itself. The right to interest grows out of the right to the legacy, and not out of a right to sue for its recovery. The principle is settled, that even where the testator has, by the disposition he has made of his property, put his estate in such condition that his general legacies cannot be paid for many years after his death, interest will, nevertheless, begin to run on them at the end of a year from his death. The following were the facts in *Freeman* v. *Simpson, 6 Sim. 75 :* The testator first gave a legacy of £300 to his daughter, and then gave the use of all his estate, both real and personal, to his widow during life, with remainder to his son, subject, however, to the payment of the legacy to his daughter. After the widow's death, the daughter filed a bill to enforce the payment of her legacy, claiming that she was entitled to interest from the end of a year after her father's death. The

Davison v. Rake.

only question discussed on the hearing was whether interest began to run from the end of a year after the testator's death, or only from the widow's death. Vice-Chancellor Shadwell held, that the daughter was entitled to interest from the end of a year after her father's death. The same principle was enforced in *Bonham* v. *Bonham, 11 Stew. Eq. 419.* In that case, the testator, after giving several pecuniary legacies of specific sums, directed his executor to " provide for and supply to his wife, out of his estate, everything which she might need or desire for her support, sustenance and happiness." The estate was small, so small that its income was not sufficient for the support of the widow, thus rendering it necessary to make annual appropriations of the principal for that purpose. For this reason it was held, that the payment of the general legacies must be postponed until after the widow's death. *Bonham* v. *Bonham, 6 Stew. Eq. 476.* After the widow's death, the Chancellor was asked the same question which was propounded in *Freeman* v. *Simpson,* and he, in answering it, said : " The fact that it was necessary, in order to carry out the testator's intention in regard to the support of his widow, to postpone the payment of the general legacies, in no wise affected the character of those legacies. * * * They bore interest from the time when they would have been payable, but for that necessity." *11 Stew. Eq. 419.* The decree under review is, in my judgment, correct in point of law.

The appellant also assails the decree on the ground that it was made without notice to him. This is the fact. He was not made a party to the proceeding in the orphans court, nor cited to appear there. The statute directs that the proceedings in suits, brought in the orphans court, for the recovery of legacies, shall, in all respects, be governed by the rules and practice of the court of chancery, so far as the same are applicable. *Rev. 788 § 165.* There can be little doubt, I think, that the appellant had such an interest in the subject-matter of this suit as would have rendered him a necessary party, if it had been brought in equity, and that if the suit had been brought there, and he omitted as party, and the suit had been prosecuted to final decree, the decree would have been without the least force

Davison *v.* Rake.

as against him.    But although this is so, I confess I cannot see my way clear to advise a reversal of the decree.    Although it be true, that the appellant was not afforded an opportunity of being heard before the orphans court, yet it would seem to be quite undeniable that he did not in consequence suffer any injustice or loss.    The question submitted to the orphans court was one of pure law, which, by previous adjudications of the superior courts of this State, was perfectly well settled.    Although not afforded a hearing in the orphans court, the appellant has been fully heard here, and this court, after carefully considering every consideration urged against the decree, finds it to be its duty to declare that the judgment of the orphans court is right in law.    It is not claimed that any matter of fact exists, which, if it had been laid before the orphans court, would or might have changed its judgment.    It is not pretended that the case, as it now stands, has not everything in it which is essential or necessary to its full and fair consideration and just determination.    In this condition of affairs, to reverse the decree merely that the suit may be sent back to the orphans court, in order that that court may bring the appellant before it, so that he may be before it when it repronounces the same decree, would seem to me more like encouraging profitless litigation than like doing speedy and effectual justice.

The question whether the decree, in its present form, can be enforced against the executor, inasmuch as it merely decides when interest began to accrue on the several sums set apart for the use of the legatees, without defining the sum due to each, or otherwise fixing the amount to be paid to each, is a question which the present appeal does not raise, and is one which was not discussed on the argument, and has not, therefore, been considered.

My judgment is that the decree appealed from should be affirmed.