The bill was filed on October 8th, 1927, to rescind an executed contract for sale of land made December 24th, 1926, and consummated May 3d 1927, upon the ground that false representations had been made with respect to rentals. The contract provided for the sale by the defendant to the *Page 559 
complainant of property therein described for the sum of $50,000 cash and contained a schedule of outstanding leases subject to which the property was to be conveyed, and among which were —
"Lease with Bernard E. Speigel, Harry Maltz and Nathan German, partners trading as New Jersey Candy Company, dated November 5th, 1925, for a period of five years from December 1st, 1925, to December 1st, 1930, which lease may be canceled at the option of the tenant on or before September 1st, 1927; the tenancy of Louis Trachman for the second store on the north side of Fifteenth Ave. from Hunterdon St., which tenancy is a hold-over tenancy under an original lease dated November 5th, 1919, the tenancy expiring on November 15th, in each year, and the monthly rental thereunder being $90; * * * and the monthly tenancy of Louis Trachman for one of said stores at the rental of $20."
The contract also contained the following clause:
"It is represented by the party of the first part that the rentals stated in said leases and above as to certain other tenancies, are the true rentals paid by said tenants, and that the said tenants do not receive any rebate or concession on said specified rent, either directly or indirectly."
At the settlement William Okin, the vice-president of defendant company, made an affidavit —
"for the purpose of inducing said Samuel Berger to accept a deed for said premises and pay the consideration therefor, well knowing that said Samuel Berger relies upon the truth of the statements herein made."
The affidavit also contained the same list of leases and tenancies as was contained in the contract, together with the following clause:
"Deponent further says that the rentals stated in said leases and above as to certain other tenancies, are the true rentals paid by said tenants, and that the said tenants do not receive any rebate or concession on said specified rent, either directly or indirectly."
Complainant contends that the representations contained in the last-quoted clause were false in that the New Jersey Candy Company and Louis Trachman had each been allowed a rebate of $120 on the yearly rental paid by them. It would *Page 560 
serve no useful purpose for me to discuss in detail the evidence submitted on this point. Suffice it to say that in my judgment the evidence fully sustains that contention and I find the fact to be that the representations in the contract and affidavit to the effect that no rebate or concession had been allowed were false. They were also material representations, and, under some circumstances, would undoubtedly afford sufficient ground for rescission. Wise v. Fuller, 29 N.J. Eq. 257; Garrison v.Technic Electrical Works, 55 N.J. Eq. 708; Commercial CasualtyInsurance Co. v. Southern Surety Co., 100 N.J. Eq. 92.
Defendant admits a $60 allowance on account of the rent of the New Jersey Candy Company, but attempts to explain it on the ground that it was an allowance for repairs to the floor of the store occupied by that company; and the allowance of $120 to Trachman is admitted but explained by the assertion that it was a refund of a cash deposit for security of rent reserved. The explanation with respect to both is, in my judgment, false. If, therefore, the decision in this case depended upon this question of fact, I should have no hesitancy in advising a decree for the complainant; but other defenses are set up by the defendant based upon laches, and election or affirmance. Complainant claims that positive knowledge of these rebates was not obtained by him until the middle of September, 1927; but the defendant asserts that it was at least as early as July, and, as notice of rescission was not given until October 8th, 1927, when the bill was filed, this "affords plenary proof of an election to abide by the contract, which is irrevocable" under the doctrine of Dennis v. Jones,44 N.J. Eq. 512, and Faulkner v. Wassmer, 77 N.J. Eq. 537.
Defendant further claims that even if the complainant did not have actual knowledge of the rebates in question until September, he made an investigation in May, shortly after the settlement, which, if properly pursued, would have given him the knowledge that he later obtained; that the investigation then made indicates that he did not rely upon the representations of the defendant with respect to the rebates or concessions to tenants, but upon his own investigation *Page 561 
instead; and that his delay, from May to October, in giving notice of rescission, is fatal to this bill. Documentary evidence supports this contention.
Under date of May 16th, 1927, Mr. Litwin, representing the complainant, wrote to Mr. Okin, the vice-president of the defendant company, and called his attention to several items respecting four of the leases, indicating that an investigation of these leases had been made by the purchaser. The New Jersey Candy Company lease and the Trachman lease were among those mentioned. The letter states: "Mr. Berger has attempted to check the rents and securities of the Fifteenth Avenue and Hunterdon Street property sold by the Harrison Improvement Company to him, with the following results." The defendant company replied under date of May 26th, 1927, admitting some of the assertions contained in Mr. Litwin's letter and denying others. In addition to this, the complainant testified that immediately after he had taken possession of the premises the tenant paying the largest monthly rental vacated the loft occupied by him and that this fact aroused his suspicions. It is fair to assume that his subsequent checking of the rents was prompted by this circumstance and that the complainant, as a result of that investigation, either did know or should have known at that time that the representations upon which this action is based were false. In Condon v. Sandhowe, 97 N.J. Eq. 204 (at p. 207), Vice-Chancellor Bentley said:
"I think there can be no question that the defendants would have been entitled to rely upon any such statement as that with which they charge the complainants. The trouble is, however, as I have said, that they did not do so, but preferred to investigate the matter for themselves, and having done so, must be charged with what it is reasonable to assume they found, or could have found, if their investigation was made with the care and completeness to be expected of one who deals at arm's length with another. This rule will be found discussed in Pom. Eq. Jur. ¶893. In a foot-note (at p. 1852) in the fourth edition of that work, the author points out as a ground of the latter branch of the rule the practical *Page 562 
impossibility of learning just how much information a party has obtained by such inquiry, and the opportunity otherwise of repudiating any transaction fairly entered into with which he has become dissatisfied. The same rule is laid down in 12 R.C.L.
(at p. 357). In Attwood v. Small, 6 Clark F. 232, representations said to be false were made by the vendor. Notwithstanding such assurances, the purchaser during the negotiations instituted an inquiry as to the truth or falsity of such statements. The investigation, as it turned out, was very superficial, and did not discover all the proofs, although there was abundant opportunity for that purpose, as there was in the case at bar. Nevertheless, it was decided by the house of lords that the vendee had cut off any claim to being misled by his own act, and that if he undertakes to judge for himself, and is not successful thereat, he should not be allowed to set up his own carelessness. In Lysney v. Selby, 2 Ld. Raym. 1118, it was said:
"`If the vendor gives in his particular of the rents, and the vendee says he will trust him and inquire no further, but rely on his particular, then, if the particular be false, an action will lie; but if the vendee will go and inquire further what the rents are, then it seems unreasonable he should have any action, though the particular be false, because he did not rely on the particular.'
"The rule is further illustrated by innumerable cases, such asJennings v. Broughton, 5 DeG. M. G. 126; SouthernDevelopment Co. v. Silva, 125 U.S. 247; Farrar v. Churchill,135 U.S. 609; Tuck v. Downing, 76 Ill. 71; Long v. Warren,68 N.Y. 426; David v. Park, 103 Mass. 501.
"The rule is, of course, a logical and just outgrowth of the doctrine of notice, and, as Vice-Chancellor Van Fleet said, inDeWitt v. Van Sickle, 29 N.J. Eq. 209:
"`A person who willfully closes his eyes to avoid seeing what he believes he would see if he kept them open, must be considered to have seen what any man with his eyes open would have seen.'"
Vice-Chancellor Bentley's language and his quotations from authorities are peculiarly applicable here. See, also, Norfolk *Page 563 and New Brunswick Hosiery Co. v. Arnold, 49 N.J. Eq. 390;Tierney v. Parker, 58 N.J. Eq. 117; Pearlman v. Krasner,103 N.J. Eq. 37; Baron v. Buermann, 103 N.J. Eq. 47; Robertson v.Criterion Construction Co., 6 N.J. Mis. R. 91; 4 Pom. Eq. Jur.3437, 3438. Such investigation by the vendee is considered as proof that he did not rely upon the vendor's representations, but upon his own inquiry instead; and if that inquiry was negligently made, or not pursued to a proper conclusion, he cannot take advantage of his own neglect. The rule is designed to prevent fraud, and is born of the practical impossibility of learning the extent of the knowledge obtained by such an investigation. It is conclusively presumed, therefore, that, given the opportunity and the investigation, knowledge reasonably available was obtained. Having investigated the very tenancies here involved, it is presumed that complainant then obtained the knowledge which he admits he later obtained. But a period of nearly five months elapsed before notice of rescission was given and this was fatal under the doctrine of Dennis v. Jones, supra, and Faulkner
v. Wassmer, supra. An executed contract of sale ought not to be lightly set aside unless the grounds for rescission are perfectly plain and the party attempting such rescission acts with promptness and prosecutes his suit with reasonable diligence. It is common knowledge that the date of the settlement under this contract approximates the beginning of the decline in the real estate market. While the bill was filed on October 8th, 1927, the final hearing in this cause was not held until December 10th, 1930, over three years thereafter. This delay was in no sense attributable to the court and it may be assumed that the parties are equally responsible for it; but it cannot be said that the cause has been diligently prosecuted and, after such long delay, during which marked economic changes have occurred, this court should hesitate to set aside the transaction even for less compelling reasons than appear here.
There is one other thing I feel I should mention. The transcript of the testimony in this cause contains one hundred and seventeen pages. In discussing this testimony, and the law *Page 564 
applicable to the cause, counsel for the parties have filed briefs containing one hundred and thirty-six pages and which, if in the form of the transcript, would have occupied twice its volume, all of which I have been obliged to read and attempt to digest, with consequent mental fatigue. Although the bill was filed October 8th, 1927, and the final hearing held December 10th, 1930, the final brief of counsel was not received until July 14th, 1931.