290 N.J. Super. 126 (1996)
675 A.2d 235
OLIVER BYRNE AND GEMMA BYRNE, HUSBAND AND WIFE, PLAINTIFFS-APPELLANTS,
v.
WEICHERT REALTORS, RUTH WADDINGTON, KELLY DEMPSEY, PATRICK GEARY, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF MARY E. GEARY, DEFENDANTS-RESPONDENTS, AND BERNARD SOPKO AND ONE SOURCE INSPECTION INC. D/B/A ECOLOGICAL HOME INSPECTION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 1996.
Decided April 30, 1996.
*129 Before Judges STERN, WALLACE and NEWMAN.
Paul A. Woodford argued the cause for appellants (Ferrara Siberine Woodford & Rizzo, attorneys; Mr. Woodford, of counsel and on the brief).
Alan J. Baldwin argued the cause for respondents Weichert Realtors, Ruth Waddington and Kelly Dempsey (Broderick, Newmark & Grather, attorneys; Mr. Baldwin, of counsel and on the brief).
Robert S. Goldsmith argued the cause for respondent Patrick Geary (Greenbaum, Rowe, Smith, Ravin & Davis, attorneys; Mr. Goldsmith, of counsel and on the brief).
The opinion of the court was delivered by NEWMAN, J.A.D.
*130 Plaintiffs Oliver Byrne and Gemma Byrne appeal from the grant of summary judgment, dismissing their complaint as to defendants Weichert Realtors (Weichert), Ruth Waddington (Waddington), Kelly Dempsey (Dempsey), and Patrick Geary (Geary), individually and as administrator of the estate of Mary E. Geary. Subsequent to the grant of summary judgment, two defendants, Bernard Sopko and One Source Inspection Inc. d/b/a Ecological Home Inspection, remained. The contract between plaintiffs and the home inspection service required that in the absence of any other parties, their claims must be submitted to binding arbitration. A dismissal without prejudice was filed as to these defendants. With regard to the other defendants, except Kelly Dempsey, we reverse the order granting summary judgment. As for Dempsey, we affirm the order granting summary judgment.
Geary, as administrator of the estate of Mary E. Geary, had put 12 Willard Place, Morristown, in the hands of Waddington as listing agent and Weichert as broker to sell the property. The original asking price was in the range of $160,000 to $169,000. The price was reduced first to $139,900 and then $129,000 as it lingered on the market. An offer was made by Robert B. Webster, Jr. in May 1992. Madge Cahill of Weichert was the real estate associate handling this first proposed sale. A termite inspection for Webster was conducted by Joseph M. Nitzsche of Foresight Engineering on June 4, 1992. Nitzsche found visible evidence of infestation of termites and carpenter ants located in the interior trim in the garage and in the siding of the house. He recommended that a pest control firm be consulted for treatment. Foresight Engineering, through Nitzsche, declined, based on the above information, to provide a warranty for this residence. An inspection was then made by Terminex on June 6, 1995 and quotes were given for a residential pest control service agreement and a termite protection plan. On June 6, 1992, Webster, through his *131 attorney, rescinded his offer to purchase the property, requesting the return of his deposit monies.
In notes dated June 8, 1992, Waddington, as a result of a phone conversation with a representative of Jackson Exterminating Inc., wrote that
Plates totally eaten away. To treat requires drilling thru the floor. Afraid of hitting water pipes. Termites may have gone up to 2nd floor.
Waddington indicated in her deposition that she was referring to the wooden "plates" on the foundation that hold up the walls.
Meanwhile, Dempsey, also a Weichert agent and a social friend of plaintiffs, showed the house to plaintiffs. Dempsey advised plaintiffs after they offered $129,000 that an offer had been made for $130,000. Plaintiffs then offered $131,000. They signed a contract on June 18, 1992. Geary agreed to the offer on June 19, but struck the form clauses that permitted plaintiffs to obtain wood-destroying insect, home, well and septic inspections, enumerated as paragraphs 4, 5, 7 and 8 respectively in the sales contract. Geary replaced the stricken clauses with the following hand-printed acknowledgement:
SELLER REPRESENTS THERE ARE CARPENTER ANTS AND TERMITES ON THE PROPERTY AND SELLER ASSUMES RESPONSIBILITY TO TERMINATE THEM AND PROVIDE BUYERS WITH A ONE YEAR WARRENTY (sic) OF THE WORK.
The parties acknowledge that when Waddington returned to Dempsey and plaintiffs with the contract signed by Geary, Waddington mentioned a termite and carpenter ant problem. Gemma Byrne testified in depositions that Waddington said the problem was "very minimal" and "fixable". Dempsey and Waddington testified that Waddington did not characterize the amount of damage.
Upon review of the contract, plaintiffs' attorney objected to the deletion of the inspection clause and demanded its reinstatement in a June 22 letter. It was then included. The property was thereafter inspected by Sopko of Ecological on June 23, 1992. Sopko noted visible evidence of termites in both the garage and house. The inspection was expressly limited to visible areas only *132 and was not an evaluation of structural damage. The inspection report described the area of inspection in the following terms:
It was made in only those areas which were readily accessible and was made in areas where infestations were mostly likely to occur. No inspection was made in areas which required dismantling, removal or movement of any object, including but not limited to, moldings, floor coverings, siding, ceilings, insulation, floors, furniture, appliances and/or personal possessions.
The areas needing repair, according to Sopko, were a sill plate in the garage, a sill plate in a closet in the bedroom and the door frame to the furnace area.
During a subsequent July 1, 1992 meeting at which Geary, the Byrnes and Dempsey were present, Geary agreed to escrow $250 in lieu of making necessary repairs and this agreement was put in writing. Plaintiffs stated that the figure was suggested as "reasonable" by Geary in response to a question by Dempsey. Gemma Byrne also said that Geary described the damage as "very minimal" and "repairable".
In the first week of June, Jackson Exterminating Inc. inspected the property at Geary's request and in Geary's presence. In the report it issued on July 14, 1992, Jackson Exterminating noted that its inspector had "found evidence of major termite damage". Plaintiffs said that they did not see this report until after the closing. Plaintiffs apparently received a copy of the report with the closing documents, along with a certificate stating that the premises had been treated by Jackson Exterminating in July 1992 for termites and carpenter ants in described areas and furnishing a one-year guaranty against re-infestation by subterranean termites in those areas.
Approximately five weeks after the closing, Oliver Byrne, who was a carpenter by occupation, began to make the repairs of the studs behind the bathroom tub. When he sought to repair the back wall in the rear downstairs room of the house, he uncovered holes in the sheetrock and discovered that the wall was eaten away. He then reviewed for the first time the report of Jackson Exterminating and saw that it had reported evidence of "major termite damage". Dempsey was called. After reviewing the *133 same report, she spoke to Madge Cahill, the sales associate on the prior deal on this same property. Madge Cahill told Dempsey the prior deal fell through "because of the termites". According to Dempsey, "[Cahill] said that the house was riddled with termites and that was her exact words, `riddled with termites'." Cahill, Dempsey noted, said that Waddington knew of the condition.
Waddington denied seeing the Jackson Exterminating report prior to closing. She also denied knowing the extent of the termite damage.
Completed repairs on the house have cost plaintiffs more than $10,000, and additional repairs are needed.
Plaintiff's complaint sounds in common law fraud, breach of duty and misrepresentation in Counts 1, 2, and 4, breach of contract against Dempsey and Weichert in Count 3, and violation of the New Jersey Consumer Fraud Act in Count 5.
Defendants Weichert, Waddington, Geary and Dempsey moved for summary judgment and plaintiffs cross-moved for summary judgment. Plaintiffs conceded the dismissal of the breach of contract count. In granting defendants' motion for summary judgment on the common law fraud and Consumer Fraud Act claims, the motion judge concluded that plaintiffs, by arranging for their own home inspection, failed to rely on representations made by any defendant. The motion judge commented that Oliver Byrne, who was a carpenter, estimated the cost of repairing the insect damage. The motion judge further found that plaintiffs were "aware pretty much exactly" of the situation as known to defendants.
On appeal, plaintiffs challenge the grant of summary judgment on the Consumer Fraud Act claim as to Weichert, Waddington and Dempsey and on the common law fraud claim as to Weichert, Waddington, and Geary. They also assert that the motion judge erred in not granting their summary judgment cross-motion on the consumer fraud and common law fraud causes of action. Plaintiffs argue that defendants are not relieved of liability for *134 damages under either claim because plaintiffs secured their own home inspection report. Plaintiffs further contend that the actions of Weichert, Waddington and Geary constituted fraud and misrepresentation and those of Weichert, Waddington and Dempsey violated the Consumer Fraud Act.
N.J.S.A. 56:8-2, part of the Consumer Fraud Act, provides that
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale ... of ... real estate or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....
Weichert, Waddington, and Dempsey argue that the Consumer Fraud Act does not apply to them because the seller they represented, Geary, was not a professional seller of real estate. Our Supreme Court has held that real estate brokers, agents and salespersons representing professional sellers of real estate are subject to the provisions of the Consumer Fraud Act. Strawn v. Canuso, 140 N.J. 43, 60, 657 A.2d 420 (1995). The provision does not apply, however, to non-professional sellers of real estate, i.e. to the homeowner who sells a house in the normal course of events. DiBernardo v. Mosley, 206 N.J. Super. 371, 376, 502 A.2d 1166 (App.Div.), certif. denied, 103 N.J. 503, 511 A.2d 673 (1986). Thus, the Act clearly does not apply to Geary. Defendants maintain that the Act does not cover real estate brokers, agents, and salespersons that represent such non-professional sellers. We disagree. Strawn, supra, addressed whether professional sellers of real estate and the brokers and agents representing them must disclose off-site conditions affecting the value of property. 140 N.J. at 59, 657 A.2d 420. The Court simply was not confronted with the issue of whether the Act applies to brokers representing non-professional sellers. Likewise, in DiBernardo, supra, we concluded that the Act does not apply to non-professional sellers, but did not directly address whether the Act covers their professional representatives. However, in DiBernardo, we approvingly cited a decision finding that similar legislation in another state did *135 not apply to non-professional sellers but did apply to their brokers. DiBernardo, 206 N.J. Super. at 376, 502 A.2d 1166 (citing Young v. Joyce, 351 A.2d 857 (Del. 1975)). In addition, the court in Arroyo v. Arnold-Baker & Assocs., Inc., 206 N.J. Super. 294, 502 A.2d 106 (Law Div. 1985), held that the Act applies to real estate brokers and their employees without distinguishing between brokers that represent professional sellers and those that represent non-professional sellers. Furthermore, the purpose of the Act, to protect consumers against "commercial" practices, clearly applies to professional brokers and agents who, regardless of whether their clients are professional sellers, are acting in a professional, "commercial" capacity. We, therefore, proceed to apply the Act here.
As we recently pointed out in Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 672 A.2d 1190 (App.Div. 1996),
Unconscionable practices fall into two general categories under N.J.S.A. 56:8-2, affirmative acts and knowing omissions. Strawn, supra, 271 N.J. Super. at 108, 638 A.2d 141. The distinguishing feature between unlawful practices characterized as affirmative acts and those characterized as knowing omissions is the requirement of the element of intent. The Act permits a finding that it was violated, and a consequent imposition of treble damages and attorney's fees (pursuant to N.J.S.A. 56:8-19), without any showing of an intent to deceive or even negligence on the part of the seller of merchandise or real estate where the representation is affirmative. However, when the wrong that is alleged consists of an omission or a failure to disclose, the plaintiff must show that the defendant acted with knowledge, as intent is an essential element of that type of fraud. [Citations omitted.]
The motion judge concluded that the plaintiffs were not entitled to the protection of the Act because they conducted an independent investigation by engaging their own termite inspector. Consequently, the judge held, plaintiffs can not claim to have relied on anything said or done by Weichert, its agents, or the seller, Geary, which resulted in damage.
We rejected a similar contention in Gennari v. Weichert Co. Realtors, supra. There we observed,
The plain language of N.J.S.A. 56:8-2, with respect to violations of the Act by affirmative misrepresentations, makes it clear that it does not matter whether "any person has in fact been misled, deceived or damaged thereby." Proof of an *136 affirmative misrepresentation of a fact material to the transaction is sufficient to establish a violation of the Act.
The same applies to omissions. A practice can violate the Act even though no one was misled or deceived as a result. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17, 647 A.2d 454 (1994). The statute specifically states that any of the enumerated prohibited acts is still a violation even if a person has not "in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2. It is the "capacity to mislead" that is critical. Cox v. Sears Roebuck & Co., supra, 138 N.J. at 17, 647 A.2d 454.
Here, plaintiffs would premise liability on Waddington's representation that the termite problem was "minimal" and on her silence about the extent of the infestation. Because actual reliance is not required by the Act, plaintiffs' subsequent engagement of Ecological and its inspector, Sopko, to do a termite inspection is not determinative of the Consumer Fraud action. Nor is it necessary to determine if Waddington's alleged characterization of the infestation as "minimal" amounted to a mere and unactionable statement of opinion. The record made before the motion judge raised questions of material issues of fact that could not be disposed of by way of summary judgment. Plaintiffs raise a material issue of fact merely by juxtaposing Waddington's characterization of the damage as "minimal" with Dempsey's admission that Cahill, another Weichert agent, described the house as "riddled" with termites, a fact Cahill reported was known to Waddington.
The June 8, 1992 note made by Waddington records that it would cost $1000 just to treat the active infestation. Moreover, Nitsche's report for Foresight Engineering was unwilling to provide a warranty based on what was found on a visual examination. These factors raise a material issue whether Weichert and Waddington, as its agent, were concealing "a material fact with intent that others rely upon it." N.J.S.A. 56:8-2. These factual issues, along with whether the alleged misrepresentation and omissions had the "capacity to mislead", were both material and substantial and made the grant of summary judgment inappropriate under *137 the standard announced in Brill v. The Guardian Life Insurance Company of America, 142 N.J. 520, 666 A.2d 146 (1995).
We, therefore, conclude that the motion judge erred in granting summary judgment on the Consumer Fraud Act claim of Count 5 of the complaint.
Plaintiffs also contend that the motion judge erred in dismissing the complaint's common law fraud and misrepresentation counts against Weichert, Waddington, and Geary. We agree.
"A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-625, 432 A.2d 521 (1981). Reliance is an essential element of common law fraud. Axelrod v. CBS Publications, 185 N.J. Super. 359, 372, 448 A.2d 1023 (App.Div. 1982). Reliance was the element that the motion judge found absent in plaintiffs' case. Because plaintiffs hired Ecological to inspect their house, which included the termite inspection, the motion judge reasoned that there could be no reliance on what was told to them by Waddington or Geary.
In instances in which a party undertakes an independent investigation and relies on it, there can be no reliance. Golden v. Northwestern Mut. Life Ins. Co., 229 N.J. Super. 405, 415, 551 A.2d 1009 (App.Div. 1988). Thus, where a purchaser has obtained the services of a pest control business to conduct a termite inspection and has relied on the results of the inspection, the purchaser may not proceed against the previous owners and their agents. See Katz v. Schacter, 251 N.J. Super. 467, 473, 598 A.2d 923 (App.Div. 1991), certif. denied, 130 N.J. 6, 611 A.2d 646(1992). To be sure, there was an independent investigation here. But that does not resolve the question of whether plaintiffs relied on the result of this investigation and not on the alleged assurances of Waddington and Geary that the damage was minimal.
*138 The record contains documentation supporting the position that plaintiffs did not rely on Sopko's inspection to determine the amount of damage done by wood-boring insects. Sopko's inspection identified the existence of termite infestation and damage, but made no effort to quantify it. Plaintiffs may have relied on the results of this investigation to assess the visible damage and to form an idea as to the cost of repairing that damage. In so doing, they may still have relied on the alleged assertions of Waddington and Geary as to the full extent of the damage. While plaintiffs admitted that they knew the damage would exceed $250, and "figured [that the] $250 [was] something towards repairs", plaintiffs were talking only about the damage pointed out to them by Sopko. Their admission was no indication that they knew the extent of the damage and could not be so interpreted. The failure of Geary or Waddington to forward promptly the Jackson Exterminating report with its suggestion of "major termite damage" effectively deprived plaintiffs of evidence that accurately identified the scope of the termite damage. Whether this failure was intentional or inadvertent remains a factual question that requires resolution at a full hearing.
The cases cited by Weichert do not require a different result. In each case, DSK Enterprises, Inc. v. United Jersey Bank, 189 N.J. Super. 242, 459 A.2d 1201 (App.Div.), certif. denied, 94 N.J. 598, 468 A.2d 232 (1983) (corporate buyer relied on expert to review foreclosure file), Froehlich v. Walden, 66 N.J. Super. 390, 169 A.2d 204 (Ch.Div. 1961) (buyer conducted negligent inspection of municipal tax map prior to sheriff's sale), Trautwein v. Bozzo, 35 N.J. Super. 270, 113 A.2d 848 (Ch.Div. 1955), aff'd, 39 N.J. Super. 267, 120 A.2d 788 (App.Div. 1956) (buyer made and relied on own investigation of tavern's income), and Berger v. Harrison Improvement Co., 108 N.J. Eq. 558, 563, 155 A. 792 (Ch.Div. 1931) (investigation of tenancy income, although superficial, shows reliance on self-investigation), the circumstances clearly suggested a lack of reliance by plaintiffs on the representations made by defendants.
*139 The situation here is in sharp contrast to those cases. In light of the concealment of Waddington's knowledge that the house was "riddled" with termites and of Geary's knowledge that there was probable "major" damage done by termites, plaintiffs' use of a home inspection service does not foreclose their rights to pursue their fraud and misrepresentation claims at trial. Plaintiffs were still entitled to rely on any assertions Geary made and Weichert made through its agent, Waddington, with respect to the extent of termite infestation of and damage to the property. That plaintiff may have thereafter relied on Sopko's report to identify visible termite damage does not mean they were eschewing reliance on the alleged statements made by defendants with respect to the extent of the termite damage. These are factual matters best resolved at trial.
We note that plaintiffs' brief does not include defendant Dempsey in the point heading regarding the common law fraud count (Point III). Our review of the record finds no representation made by Dempsey regarding the extent of the termite infestation or damage, nor do we find any suggestion that she knew of the extent of the termite infestation and damage. We also fail to find any effort by Dempsey to conceal any information from plaintiffs regarding the termite condition. To the contrary, the record indicates that Dempsey was just as surprised as plaintiffs to learn of Waddington's alleged prior knowledge of the extent of the termite infestation and damage when the Webster deal fell through. Thus, no issues of material fact existed which precluded the motion judge from granting summary judgment in favor of Dempsey as to both the common law fraud and Consumer Fraud Act claims. As for Count 2, alleging a breach of duty by Dempsey and Weichert, it was not briefed and therefore is deemed waived. See In re Bloomingdale Conval. Ctr., 233 N.J. Super. 46, 48 n. 1, 558 A.2d 19 (App.Div. 1989).
With respect to plaintiffs' cross-motion for summary judgment, we are satisfied that the motion was correctly denied because material facts were seriously in dispute. We need not repeat what *140 has already been said in our reversal of defendants' summary judgment motions.
In sum, we reverse the grant of summary judgment on the common law fraud, misrepresentation and Consumer Fraud Act claims in the complaint (Counts 1, 4 and 5) as to defendants Weichert and Waddington and the common law fraud and misrepresentation counts (1 and 4) as to defendant Geary and remand for trial. We affirm the grant of summary judgment as to defendant Dempsey on Counts 1, 2, 4 and 5.