**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1226-20

MARIA TLATELPA,

    Plaintiff-Appellant,

v.

MAURICIO TORRES,

    Defendant-Respondent.

_____

           Submitted December 8, 2021 – Decided February 28, 2022

           Before Judges Whipple and Susswein.

           On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2829-19.

           Bastarikka, Soto, Gonzalez & Somohano, LLC, attorneys for appellant (Franklin G. Soto, on the brief).

           Law Office of Abe Rappaport, attorneys for respondent (Kevin E. Lee, on the brief).

PER CURIAM

    This case arises from an "as is" sale of a single-family residential property.

Plaintiff Maria Tlatelpa, the purchaser, appeals from a December 7, 2020, Law

Division order granting summary judgment in favor of defendant, Mauricio Torres, the seller, dismissing plaintiff's complaint alleging fraud under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 ("CFA") and the common law. After carefully reviewing the record in light of the applicable principles of law, we affirm.

I.

We briefly summarize the pertinent facts and procedural history. On August 20, 2018, the parties closed on the sale of a single-family residential property located on Randolph Avenue in Clifton (the Property). Torres did not reside in the Property, having acquired it approximately one year before as an investment. Neither party disputes that the Contract of Sale for the Property indicates that it was being sold "as is." The Contract of Sale also included Tlatelpa's acknowledgment that she entered into the sale on the basis of her own knowledge, and that she was not relying on any representation made by the seller.

Under the Contract of Sale, Tlatelpa retained the right to inspect the Property before closing and to rescind the sale if that inspection was unsatisfactory. She exercised that option and commissioned a Home Inspection Report (Report), which was prepared by A Advanced Home Inspection. The

Report revealed several issues, including termite damage "infiltrating the home's structures" that required a supportive beam in the basement to be replaced. The report also revealed a leaking hot water heater and leaks in the plumbing of both bathrooms. The plumbing issues had caused significant mold growth throughout the home. The report advised Tlatelpa to retain the services of a licensed plumber and a mold abatement company to "investigate, remedy and certify[.]" While the report did not specifically mention problems with the septic system, it did note that "[t]he main case iron underground sewer pipe is heavily rusted, corroded, leaking and in need of complete replacement by a licensed plumber." Likewise, the Report noted there was "evidence of a possible abandoned underground oil tank," alerting Tlatelpa to the potential problem.

Torres agreed to abate the termite issue and repair the support beam before closing. The trial court found that "[p]laintiff was made aware of the defective plumbing in the inspection report and chose to proceed with closing on the property" although it had not been repaired by the seller before closing. As the trial court emphasized in its opinion, the Contract of Sale indicates "[t]he Buyer entered into the Contract on August 20, 2018, based on her knowledge and not on any representation made by the seller."

3

On September 9, 2019, Tlatelpa filed a complaint alleging that Torres committed fraud under the CFA and common law. In that complaint,

> Plaintiff alleged that Defendant informed plaintiff that the [p]roperty was habitable, in saleable condition with no material defects; that there were significant issues with the plumbing[] and sewer line which cost the Plaintiff $18,000 to repair; and an oil tank had to be removed costing an additional $10,000. Plaintiff alleged that Defendant knowingly misrepresented, concealed, or omitted material facts with the intent that the Plaintiff rely on said misrepresentation.
>
> [Ibid.]

At the close of discovery, Torres moved for summary judgment. He argued that the record showed that he was a casual investor rather than a licensed realtor and therefore was not subject to the CFA. He further argued that Tlatelpa failed to present evidence of his pre-existing knowledge of the defects, misrepresentation, or reasonable reliance. Tlatelpa opposed the motion for summary judgment.

The parties waived oral argument. On December 7, 2020, the trial court issued an order and written Statement of Reasons, granting Torres' motion for summary judgment on both claims. The trial judge found that although Torres had purchased the property as an investment, Tlatelpa failed to present evidence to prove her claim that "Defendant is in the business of 'flipping' houses." The

court found there was no evidence to suggest that Torres was a professional seller of real estate or that he advertised his services as a realtor to the public. The trial judge concluded that, as a non-professional, the seller was not subject to the CFA. The court also found that Tlatelpa failed "to present evidence of unlawful conduct by the Defendant that has a causal connection to [her] ascertainable loss" as required by the CFA.

The trial court reasoned:

> The Contract of Sale indicates that the property was being sold "as is." In the July 7, 2018, Inspection Report, commissioned by the Plaintiff, Plaintiff was put on notice of potential plumbing issues throughout the property . . . . Nevertheless, Plaintiff proceeded to close on the property. The Plaintiff has offered no further proof of misrepresentation or omission on the part of the [seller] regarding the condition of the property's plumbing. Furthermore, no evidence has been proffered to demonstrate that Defendant had any knowledge of the oil tank, or that he suppressed such knowledge. The only evidence offered as to Defendant's knowledge was an alleged conversation between Plaintiff and Defendant's neighbor, Bujar[,] as to his reasons for not purchasing the property. This conversation amounts to nothing more than hearsay and does not establish that Plaintiff was aware of, and concealed knowledge of the oil tank.

The trial court also found that Tlatelpa failed to present evidence to prove the common law fraud claim. Specifically, the court found that she failed to

5

"provide[] any evidence of a misrepresentation or omission as to a present or past fact" or that the buyer had relied on any such misrepresentation or omission.

Tlatelpa alleged that the Torres had previous knowledge of the defect in the sewer pipe because he had repaired it himself in the past. The trial court found that she produced "no facts to rely on this claim" because she had "neglected to set forth anything related to plumbing that [the seller] may or may not have done[]" beyond "a permit for building that he took out from the city of Passaic[.]" The trial court reasoned that plaintiff "ha[d] not sufficiently set forth a factually based act or omission on the part of the [seller] to maintain her claim of fraud." The court concluded, "[f]or the foregoing reasons, there exists no genuine dispute as to any material facts and the Motion for Summary Judgment on both counts of the Complaint is granted."

This appeal followed.

Plaintiff raises the following contentions for our consideration:

POINT I

THE JUDGE ERRED BELOW IN DETERMINING THAT APPELLANT HAD FAILED TO DEMONSTRATE THAT A GENUINE "ISSUE" OF FACT EXISTED CONCERNING WHETHER THE RESPONDENT WAS SUBJECT TO THE PURVIEW OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1 to -20.

6

POINT II

THE [TRIAL] COURT ERRED IN DISMISSING THE SECOND COUNT OF THE APPELLANT'S COMPLAINT RELATING TO THE ISSUE OF ESTABLISHING A VIABLE CLAIM AGAINST THE RESPONDENT FOR COMMON LAW FRAUD.

II.

We begin our analysis by acknowledging the legal principles governing this appeal.  Our review of a trial court's summary judgment order is de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)).  Accordingly, the trial court's analysis is not entitled to any special deference.  Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We apply the same standards as the trial court when reviewing an appeal of an order granting summary judgment.  Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987).  Summary judgment should be granted when the pleadings and discovery show "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  A genuine issue of material fact exists when the discovery materials, "viewed in the light most favorable to the non-

A-1226-20

moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995).

Importantly for the purposes of this appeal, "[b]are conclusions in the pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n., 67 N.J. Super. 384, 399–400 (App. Div. 1961). Our rules require a movant to file a statement of material facts, with or without supporting affidavits, that sets forth a concise statement of each material fact to which the movant contends there is no genuine issue. R. 4:46-2(a). The respondent must file a responding statement that admits or disputes each fact in the movant's statement. R. 4:46-2(b). Unless the respondent specifically disputes a material fact and demonstrates the existence of a genuine issue of fact, the movant's statement will be deemed admitted. R. 4:46-2(a)–(c). A party offering no substantial or material facts in opposition to the motion cannot complain if the court takes as true the uncontradicted facts in the movant's papers. See Judson v. People's Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954); R. 4:46-5.

III.

We first address contentions regarding the CFA. N.J.S.A. 56:8-2 defines

"[f]raud . . . in connection with the sale or advertisement of . . . real estate" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]
>
> [N.J.S.A. 56:8-2.]

In Zaman v. Felton, the Supreme Court explained, "[t]o prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). Importantly for the purposes of this appeal, the Court in Zaman further explained,

> Notwithstanding these broad definitions, New Jersey appellate courts have adopted "a limited construction of the [CFA]'s applicability to real estate transactions." 539 Absecon Boulevard, L.L.C. v. Shan Enters. Ltd., 406 N.J. Super. 242, 274 (App. Div. 2009). Consistent with the CFA's limitation to "fraudulent, deceptive or other similar kind of selling or advertising practices,"

9

> Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978), our courts have declined to impose the CFA remedies upon the non-professional, casual seller of real estate, see Strawn v. Canuso, 140 N.J. 43, 59 (1995) (limiting "holding to professional sellers of residential housing (persons engaged in the business of building or developing residential housing) and the brokers representing them"); Byrne v. Weichert Realtors, 290 N.J. Super. 126, 134 (App. Div.) ("The provision does not apply, however, to non-professional sellers of real estate, i.e. to the homeowner who sells a house in the normal course of events."), certif. denied, 147 N.J. 259 (1996). Indeed, this Court has never applied the CFA against a non-professional, who does not advertise real estate services to the public, based upon his or her purchase of residential real estate for personal use or as an investment.
>
> [Id. at 223]

The Court held in that case that the trial court correctly dismissed the plaintiff's claim on the grounds that he failed to demonstrate that the defendant "committed an 'unconscionable business practice' within the meaning of N.J.S.A. 56:8-2[]" because "Zaman did not advertise real estate services to the public, initiate contact with [the defendant], or demand a fee for real estate services." Id. at 224.

In the matter before us, the trial court found that Tlatelpa failed to present evidence to prove two of the three elements: unlawful conduct by the seller and a causal relationship between any such unlawful conduct and the buyer's

ascertainable loss. Torres produced an affidavit stating that he was not a licensed realtor or broker and that he did not advertise real estate services to the public. The record shows that Tlatelpa produced no contradictory evidence. The trial court found in this regard:

> Here, the CFA does not apply because the Defendant was not a professional seller of real estate. There is no evidence to suggest that the Defendant is a professional who advertises real estate services to the public. The Defendant simply purchased the property as an investment. Plaintiff failed to provide evidence that Defendant was in the business of "flipping" houses as alleged in the opposition [to defendant's motion for summary judgment].

We agree with the trial court's finding and conclusion. We reiterate that a bare assertion is insufficient to "defeat a meritorious application for summary judgment." U.S. Pipe, 67 N.J. Super. at 399–400. Accordingly, we conclude that Tlatelpa failed to present evidence to prove the first element of the CFA—that defendant's conduct was unlawful.

The trial court found another independently sufficient ground for dismissing the CFA claim. As we have noted, a plaintiff must prove not only unlawful conduct but also a causal link between that conduct and the plaintiff's ascertainable loss. In this instance, Tlatelpa failed to prove that Torres' conduct caused her loss.

11

Neither party disputes that the property was purchased "as is." The Contract of Sale includes an express affirmation that Tlatelpa's decision to purchase the Property did not rely on any representations by the seller. Furthermore, Tlatelpa exercised the option to inspect the Property before completing the transaction. In these circumstances, by completing the transaction, she agreed to accept the risk of expensive home repairs unknown at the time of sale. We thus agree with the trial court that Tlatelpa failed to present evidence to support her CFA claim. See Judson, 17 N.J. at 75; R. 4:46-5.

## IV.

We next address Tlatelpa's contentions regarding common law fraud. To state a claim for common law fraud, a plaintiff must allege facts that, if proven, would establish the following five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citation omitted). Importantly, "fraud is never presumed, but must be established by clear and convincing evidence." Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div. 2003).

12

Tlatelpa averred that

> [t]he failure to disclose the existence of the [o]il tank constituted (1) a (<u>potential</u>) material misrepresentation of present fact which; (2) Respondent's likely knowledge that the appellant was unaware of its existence constituted a false fact; (3) which was information which the Respondent should have expected the Appellant to rely on; (4) which the Appellant did in fact rely on in deciding to purchase the property and (5) which unfortunately caused her resulting financial harm.

We agree with the trial court that Tlatelpa failed to present evidence to prove either misrepresentation or reasonable reliance. It is insufficient to allege a "potential" material misrepresentation. Rather, to survive a motion for summary judgment a plaintiff must produce evidence of the defendant's misrepresentation. As we have already noted, when a party offers no substantial or material facts in opposition to the summary judgment motion, the court may take as true the uncontradicted facts in the movant's papers. See <u>Judson</u>, 17 N.J. at 75; <u>R.</u> 4:46-5. Here, Tlatelpa failed to provide evidence that Torres was aware of the problems with the septic system or the underground oil tank.

Nor does the record support her claim that she reasonably relied on the seller's representation. To the contrary, by initialing the relevant term on the Contract of Sale, she expressly affirmed that she did not rely on any

13

representations made by respondent in deciding to complete the purchase. The Contract reads in relevant part:

> (D) Buyer's Right to Inspections.
>
> Buyer acknowledges that the Property is being sold in an "as is" condition and that this contract is entered into based upon the knowledge of Buyer as to the value of the land and whatever buildings are upon the Property, and not on any representation made by Seller, Brokers or their agents as to character or quality of the Property.
>
> [Ibid.]

"When used in connection with the sale of real property, 'as is' generally means the purchaser is acquiring real property in its present state or condition." K. Woodmere Assocs. L.P. v. Menk Corp., 316 N.J. Super. 306, 316 (App. Div. 1998). Appellant took the property "with whatever faults it may possess" and released the seller of "any obligation to reimburse purchaser for losses or damages resulting from the condition of the property conveyed." Id. at 317. Buyer's initials directly below section (D) indicate her affirmation.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1226-20