40 A.3d 85 (2012)
425 N.J. Super. 171
Anwar WALID, Donna Walid and Walid Couture Enterprises, Inc., Plaintiffs-Appellants,
v.
YOLANDA FOR IRENE COUTURE, INC., a New Jersey Corporation, Irene Paster, MGR Enterprises, Inc., a New York Corporation and Michael Thomas and Yolanda Couture, Inc., Defendants-Respondents.
No. A-3112-10T4.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 2011.
Decided April 5, 2012.
*86 Thomas J. Hirsch argued the cause for appellants Anwar Walid, Donna Walid and Walid Couture Enterprises, Inc.
Raymond A. Grimes argued the cause for respondents Michael Thomas and MGR Enterprises, Inc. (Law Office of Raymond A. Grimes, P.C., attorneys; Mr. Grimes, on the brief).
Avrom R. Vann argued the cause for respondents Yolanda for Irene Couture, Inc., Irene Paster and Yolanda Couture, Inc.
Before Judges YANNOTTI, ESPINOSA and KENNEDY.
*87 The opinion of the court was delivered by
KENNEDY, J.S.C. (temporarily assigned).
Plaintiffs appeal from a judgment entered November 19, 2010, following a bench trial, dismissing their complaint against defendants. They also appeal from a subsequent order of February 4, 2011, denying their motion for reconsideration. On appeal, plaintiffs contend the trial judge erred in determining that plaintiffs failed to prove by clear and convincing evidence that they justifiably relied upon material misrepresentations made by defendants respecting the income of a business plaintiffs purchased, thereby causing them to sustain damages. For reasons set forth hereinafter, we vacate the judgment and remand the matter to the trial court for further proceedings.

I
The facts that follow are drawn from the record following a bench trial "on the papers." The parties explicitly agreed that the trial judge, having become "familiar with the matter through the summary judgment brief[s] and certifications and the like," would review the parties' pleadings, expert reports, deposition transcripts and "summary judgment papers, which included certifications, statements of material facts [and] many exhibits" and render a decision.
Plaintiffs Anwar and Donna Walid (hereinafter sometimes referred to as the Walids) began looking for a business to purchase in 2005. Donna Walid had worked for a high-end retail clothing store in New York and had studied textile design prior to obtaining a Master's Degree in organization and development. Her husband, Anwar Walid, had a degree in electrical engineering and had worked in research and development of telecommunications systems for Lucent Technologies.
In March 2006, the Walids learned from an internet website that "Irene's Bridal Shop" was being offered for sale and that Jim Hamdan (Hamdan), was the "listing broker." The Walids contacted Hamdan, who provided them with a "fact sheet" he had obtained from the seller and owner of "Irene's Bridal Shop," Yolanda for Irene Couture, Inc. (YIC), the principal of which was Irene Paster. The fact sheet described the business as a general retail store in Chatham, New Jersey, which sold "wedding dresses and related types of clothing." The fact sheet listed "annual sales of $582,500 and `operating profit' of $289,445. The listing price for the business was $700,000."
Because the Walids intended to finance the purchase, Hamdan referred them to a local bank and forwarded to the bank "information about the business, including tax returns for 2003 and 2004 and financial details for 2005, because the tax return was not yet available for 2005." After some negotiation, the Walids agreed to purchase the business for $700,000 subject to a review by their accountant and attorney and "pro[of] of sales." The Walids retained an attorney but elected not to retain an accountant to review the financial figures because "Mr. Walid would do the review himself." Their counsel explicitly advised them to "retain an accountant, a CPA, or a business evaluator to examine the finances [of] the business" but the Walids, as noted, elected not to do so. Irene Paster subsequently met with Mr. Walid and provided him with bank deposit summaries, tax returns and pending purchase orders. She also provided "profit and loss statements of the business, compilation reports and bank statements for the years 2003 to the first quarter of 2006."[1]
*88 The financial information provided by Irene Paster showed "gross revenues" as follows:
 2003$582,913;
 2004$731,166;
 2005$588,000;
 2006 (first quarter)$173,607.
After reviewing this financial information, the Walids signed a contract with YIC on April 10, 2006, to purchase the business for $700,000. Paragraph 9A of the contract provided as follows:
Buyer relies upon their [sic] own evaluation, inspection and legal search of the business and does not rely upon any representations that are not contained in writing in this contract of sale.
The contract specified a closing date of May 15, 2006. After the Walids secured bank financing for the purchase, the closing occurred.
The business ultimately failed and the Walids, together with the entity they formed to run the business, Walid Couture Enterprises, L.L.C., filed a complaint in the Law Division against YIC, Irene Paster, Michael Thomas (Thomas) and MGR Enterprises, Inc. (MGR). Thomas, through MGR, was the accountant for YIC and Paster and he prepared the compilation reports and tax returns that Mr. Walid reviewed prior to closing. The complaint alleged that defendants "intentionally misstated the financial condition" of the business and thereby fraudulently induced plaintiffs to purchase the business. In an amended complaint, the Walids also alleged a cause of action against Yolanda Couture, Inc. (YC), a New York corporation also owned by Irene Paster, which made wedding gowns for sale to retail bridal shops. Plaintiffs alleged that revenues generated by YC were deposited into the bank accounts of YIC thereby fraudulently overstating the income of YIC. The complaint asserted that YC conspired with Irene Paster and YIC to defraud plaintiffs.
Irene Paster established YC in New York City in 1994. The nature of its business was the design and manufacture of wedding dresses for wholesale distribution to retail outlets. The trial judge found that receipts for YC were, in fact, deposited into the YIC bank accounts. The trial judge further found that in 2003, YC revenues of $314,611.44 were deposited into YIC bank accounts, inflating YIC's apparent income by over 50%. In 2004, $315,872.73 in YC revenues were deposited into YIC bank accounts, thereby inflating YIC's apparent income by over 42%. In 2005, YC revenue deposited into YIC accounts inflated its apparent income by 31% and for the first quarter of 2006, the apparent income was inflated by over 62%.
Irene Paster attempted to explain the deposits by claiming that she did not want to have retail stores know that a "competitor was making the dresses." The trial judge specifically found Irene Paster's explanation was "false." The judge concluded:
[T]he [c]ourt is unable to credit any of Ms. Paster's testimony. It is so at odds from one account to another, depending on whether one is looking at a deposition where there are contradictions within depositions ...; contradictions between certifications and deposition testimony. And when one is telling untruths, that's what happens. It's very difficult to keep a story straight, and Ms. Paster was unable to do it.
The judge explicitly found "by clear and convincing evidence that Irene Paster *89 fraudulently represented the gross revenues of [YIC], which was doing business as Irene's Bridal Shop for the years 2003, 2004, 2005 and the first quarter of 2006."
The judge further found:
This was a material misrepresentation of past facts. That the income of the business was a material fact cannot be argued. The contract provided the purchasers with an opportunity to investigate [proof of sales]. Obviously, the selling price of a business with no assets, other than inventory and a lease and good will, is based primarily on its income over a relevant timeframe; and that certainly was true here, where... that income was misrepresented by the seller, Irene Paster, because she had fraudulently increased that income by depositing checks issued to YC into the bank account of [YIC].
The court further found "by clear and convincing proof, that Irene Paster knew the income information that she gave to the plaintiffs to be false.... It was her scheme to inflate the income of [YIC] by diverting income from YC." The court also found "clearly and convincingly, that ... Irene Paster intended for the plaintiffs to rely on the income figures she provided to them."
Further, the trial judge noted:
The clear and convincing import of Irene Paster's action is that she knew that [YIC] was not profitable, that she knew that she could not sell the business for $700,000 by truthfully presenting the revenue figures, that she embarked on a scheme to make the business appear profitable, so that it could be sold, and that she executed her scheme.
Next, the trial judge dealt with the issue of the Walids' "reasonable reliance" on these material misrepresentations. The judge stated:
[W]here a party conducts an independent investigation before entering into an arm's length transaction, that party will be accountable for everything such party could have discerned by employing reasonable diligence.
Put differently, if upon conducting an investigation the representee learns facts such that he is alerted to the falsity of the representor's statements, he will be barred from seeking relief.
Citing a litigation report prepared for plaintiffs by an expert in the bridal business, Gary Wright, that the sales figures produced by the defendants were "unbelievable... to anyone with practical experience and financial knowledge of independently-owned bridal stores," the judge concluded that plaintiffs "have not carried their burden of proof as to the fourth element that must be proved to establish common-law fraud ..."reasonable reliance. The judge thereupon entered judgment dismissing the complaint "as to all defendants, with prejudice." While the trial judge did not fully explain his reasoning, he appeared to hold that having elected to forego employing a business consultant to review the purported income before buying the business, plaintiffs are thereby chargeable with knowledge that would have been readily apparent to an expert in the businessthat is, that the income figures were inflated.

II
Appellate review of a trial judge's findings of fact is limited by well-settled principles. "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless *90 we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Fagliarone v. Twp. of N. Bergen, 78 N.J.Super. 154, 155, 188 A.2d 43 (App.Div), certif. denied, 40 N.J. 221, 191 A.2d 61 (1963). See also Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J.Super. 332, 338, 382 A.2d 933 (App.Div.), aff'd o.b., 78 N.J. 320, 394 A.2d 360 (1978) (stating that where the record "leaves us with the definite conviction that the judge went so wide of the mark that a mistake must have been made," we may "appraise the record as if we were deciding the matter at inception and make our own findings and conclusions.").
Moreover, the scope of appellate review is expanded when the alleged error on appeal focuses on the trial judge's evaluations of fact, rather than his or her findings of credibility. Snyder Realty Inc. v. BMW of N. Amer., 233 N.J.Super. 65, 69, 558 A.2d 28 (App.Div.1989) ("[W]here the focus of the dispute is not on credibility but, rather, alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom the appellate function broadens somewhat.").
Further, a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). Our review of a trial judge's legal conclusions is de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J.Super. 470, 476, 892 A.2d 711 (App. Div.2006) (citing Rova Farms, supra, 65 N.J. at 483-84, 323 A.2d 495).

III
"To establish common-law fraud, a plaintiff must prove: `(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Banco Popular North America v. Gandi, 184 N.J. 161, 172-73, 876 A.2d 253 (2005)(quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997)). "Reliance is an essential element of common-law fraud." Byrne v. Weichert Realtors, 290 N.J.Super. 126, 137, 675 A.2d 235 (App. Div.), certif. denied, 147 N.J. 259, 686 A.2d 761 (1996). While "the buyer of a business is entitled to rely on the seller's statement concerning [the business's] ... income," Trautwein v. Bozzo, 35 N.J.Super. 270, 278, 113 A.2d 848 (Ch.Div.1955), aff'd o.b., 39 N.J.Super. 267, 120 A.2d 788 (App.Div. 1956), where the buyer undertakes an independent investigation and relies upon that, rather than the seller's statements, there is no reliance as a matter of law. Byrne, supra, 290 N.J.Super. at 137, 675 A.2d 235. Thus, "if the buyer knows before executing the agreement of purchase and sale, that the seller has misrepresented to him the income of the subject matter of the sale, the buyer is not deceived and may not ... recover for fraud." Trautwein, supra, 35 N.J.Super. at 278, 113 A.2d 848.
While reasonable reliance thus constitutes a critical element of plaintiff's cause of action,
The nature and extent of the reliance required is subject to debate. For example, it has been held that "if a party to whom representations are made nonetheless chooses to investigate the relevant state of facts for himself, he will be deemed to have relied on his own investigation." *91 DSK Enterprises, Inc. v. United Jersey Bank, [189 N.J.Super. 242, 251, 459 A.2d 1201 (App.Div.1983) ]. See also, John Hancock & Co. v. Cronin, 139 N.J. Eq. 392, 397-98 [51 A.2d 2] (E. & A.1947)[]; Froelich [Froehlich] v. Walden, 66 N.J.Super. 390, 395 [169 A.2d 204] (Ch.Div.1961). On the other hand, our Supreme Court recently observed that "[o]ne who engages in fraud ... may not urge that [his] victim should have been more circumspect or astute." Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 626, n. 1 [432 A.2d 521] (1981). [United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 564-65, 483 A.2d 821 (App.Div.1984).]
Cf. Union Ink Co. v. AT&T Corp., 352 N.J.Super. 617, 646, 801 A.2d 361 (App. Div.2002) (where we suggested that when there is actual reliance upon a fraudulent misrepresentation, "objectively reasonable" reliance may not also be required to support common law fraud.)
The Restatement (Second) of Torts § 537 (1977) requires that there be "justifiable" reliance to recover on a fraudulent misrepresentation. In this sense, then, the reliance must be actual, as well as justifiable. The Restatement further provides, at § 541, that reliance on a fraudulent misrepresentation is not justified if the recipient of the misrepresentation "knows that it is false or its falsity is obvious to him." The authors of Restatement § 541, comment a explicitly recognized that "the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses." Thus, a purchaser experienced in a business may not be justified in relying upon a misrepresentation respecting the income of that business where he knows it is false or its falsity should be obvious to him, whereas a purchaser inexperienced in the business might be justified in relying upon a misrepresentation about income because the inexperienced purchaser may not be capable of "appreciating its falsity at the time." Ibid.
Additionally, § 540 of the Restatement provides that the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth although he or she might have ascertained the falsity of the representation had he or she made an investigation. However, the Restatement recognizes no obligation to undertake an investigation. In the comment, it is stated that "it is no defense to one who has made a fraudulent statement about his financial position that his offer to submit his books to examination is rejected. On the other hand, if a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious under the rule stated in § 541." Restatement § 540, comment. a.
The principles set forth in the Restatement accurately reflect the law in New Jersey. In Trautwein, supra, 35 N.J.Super. at 272, 113 A.2d 848, plaintiff sought rescission of an agreement for the purchase of a premises with a retail consumption liquor license. Plaintiff claimed that he was induced to enter the agreement by reason of representations in an advertisement stating that the "bar business" had gross sales of "$1100 weekly." Id. at 273, 113 A.2d 848. After entering the contract, the plaintiff learned that weekly bar receipts rarely exceeded $1000 and he sought to rescind the agreement. Id. at 276, 113 A.2d 848. The court explained that "[d]eliberate misrepresentation of income from a business is a familiar category of fraud," ibid., and that it has "often been held that the buyer of the business is entitled to rely on the seller's statement concerning its rents, profits or income." Id. at 278, 113 A.2d 848. "However, where *92 one to whom an allegedly false representation is made concerning such rents, profits or income makes an independent investigation to learn the truth, and relies on his own investigation rather than on the [alleged] misrepresentation, he has no cause of action based on fraud." Ibid.
In Trautwein, the court found that the plaintiff did examine the records of the business and "saw for himself that the business produced receipts far less than $1,100" and consequently denied rescission on the basis of fraud. Id. at 278-79, 113 A.2d 848. It is thus significant that the plaintiff in Trautwein actually examined the records which contradicted the representation made in the advertisement.
By contrast, in Pioneer Nat'l, supra, 155 N.J.Super. at 343, 382 A.2d 933, we reversed judgment for defendant policyholder and directed that judgment be entered in favor of plaintiff title insurance company rescinding its policy, because the policyholder knew there was a defect in the title arising in the nineteenth century and, without disclosing it, ordered from plaintiff a title insurance policy based only upon a standard sixty-year search. We rejected the determination by the trial judge that plaintiff could not be said to have justifiably relied upon the policyholder's deliberate concealment of his knowledge of the title defect because "had [plaintiff] exercised due care, it would have uncovered the title defect." Id. at 342, 382 A.2d 933. We observed, "[o]ne who engages in the kind of conduct here involved may not urge that his victim should have been more circumspect or astute." Ibid. Also, in Rothstein's v. Rothstein, 105 N.J.L. 134, 138, 143 A. 366 (E. & A.1928), the court rejected the legal proposition that the purchaser of a business may not rely upon any representations made by the seller "provided they had the ability and discernment to make their own investigation."
Similarly, in Byrne, supra, 290 N.J.Super. at 130, 675 A.2d 235, we reversed summary judgment for the seller of a house[2] because there was an issue of fact regarding the buyers' reliance upon the seller's misrepresentations about the extent of termite damage to the house, even though the buyers hired their own inspection firm. We rejected the motion judge's conclusion that plaintiffs, by securing their own home inspection, could not be said to have relied upon defendants' misrepresentations that the termite problem was "very minimal," "fixable," and "repairable." Id. at 131-32, 675 A.2d 235. We observed that
[p]laintiffs were still entitled to rely on any assertions [defendants] made ... with respect to the extent of termite infestation and damage to the property.... That plaintiff may have thereafter relied on [an independent] report to identify visible termite damage does not mean they were eschewing reliance on the alleged statements made by defendants with respect to the extent of the termite damage.
[Id. at 139, 675 A.2d 235.]
Thus, given that the defendants concealed their knowledge of "major" termite damage to the house, which was, in fact, "riddled" with termites, the plaintiffs' reliance upon their own home inspection report that identified only visible damage, did not preclude the plaintiffs from pursuing a claim of common law fraud. Ibid.
Applying these principles, we are thoroughly satisfied that the conclusion of the trial judge that plaintiffs did not prove they "justifiably relied" on misrepresentations made by defendants is clearly mistaken and so plainly unwarranted that the *93 interests of justice demand intervention and correction. See Pioneer Nat'l, supra, 155 N.J.Super. at 338, 382 A.2d 933. Here, the trial judge apparently imputed to the Walids knowledge about the finances of a bridal business that would only have been apparent to an expert or to one experienced in the business. However, neither Walid had any expertise or experience in the bridal business and thus it would not have been obvious to them that the income figures for YIC were inflated.
Further, the facts do not support the conclusion that the Walids conducted an independent investigation precluding justifiable reliance on the misrepresentations of defendants. Mr. Walid simply reviewed financial compilations, income tax returns and bank records that, in fact, concealed the fraud. While it was advisable for the Walids to have engaged the services of an expert to examine the books and records of YIC, as their attorney had urged, they were under no duty to do so. See, e.g., Trautwein, supra, 35 N.J.Super. at 278, 113 A.2d 848.
Moreover, the fact that the income of YIC was inflated by deposits from another business would not have been obvious from the records presented to plaintiffs for review. One is not precluded from recovering for a fraud by examining the very records that contain the fraudulent misrepresentations. Where a seller withholds accurate financial information about the business, and produces records that fraudulently inflate the income of the business, it cannot be said that a purchaser relies upon his own investigation by, in fact, examining falsified records. See, e.g., Byrne, supra, 290 N.J.Super. at 126, 675 A.2d 235.
Defendants Thomas and MGR contend that even if the trial judge erred in determining that the Walids did not prove justifiable reliance upon intentional misrepresentations, the judgment must nonetheless be upheld because of the provision in the contract stating that plaintiffs were relying upon their own "evaluation, inspection and legal search of the business and [do] not rely upon any representations that are not contained in writing in this contract of sale." We disagree.
"[A] party to an agreement cannot, simply by means of a provision in the written instrument, create an absolute defense or prevent the introduction of parol evidence in an action based on fraud in the inducement to contract." Bilotti v. Accurate Forming Corp., 39 N.J. 184, 204, 188 A.2d 24 (1963) (quoting Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J.Super. 369, 377-78, 164 A.2d 607 (App.Div.1960)).
Thus, while the parol evidence rule operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument, parol proof of fraud in the inducement is not considered as either additional or substitutionary but rather as indicating that the instrument is, by reason of the fraud, void or voidable. The evidence is admitted, not in order to enforce the contract, but rather to avoid it, or as here, to prosecute a separate action predicated upon the fraud. Thus, a limitation such as ... [that] herein does not bar evidence of such fraud.
[Ocean Cape, supra, 63 N.J.Super. at 378, 164 A.2d 607 (citations omitted).]
Citing Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J.Super. 570, 598 A.2d 1234 (App.Div.1991), defendants Thomas and MGR contend that while parties may utilize extrinsic evidence to prove fraud in connection with matters not expressly addressed in the contract where, as here, the issue of representations was expressly addressed in the contract, the parol evidence rule does not apply. While we generally agree that parol evidence may not be received *94 to vary express terms in a contract, that principle is inapplicable here.
A party perpetrating a fraud may not invoke a general "no representation" clause to preclude evidence of earlier explicit misrepresentations, if the specific facts misrepresented are peculiarly within that party's knowledge and were, in fact, intentionally misrepresented. Solutia Inc. v. FMC Corp., 385 F.Supp.2d 324, 340 (S.D.N.Y.2005). This case differs from Filmlife, where the plaintiff asserted it was entitled to receive the cash value of a trade-in vehicle on a new lease whereas the lease expressly provided that the trade-in value would be utilized as a capitalized cost reduction. Filmlife, supra, 251 N.J.Super. at 573, 598 A.2d 1234. Here, by contrast, material misrepresentations were made to plaintiffs respecting the income of the business they were purchasing and then, in an effort to escape later liability for such misrepresentations, a contract was prepared with a general integration clause. As we have noted, where the "allegedly misrepresented facts are peculiarly within the misrepresenting party's knowledge, even a specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentation." Warner Theatre Assocs. P'ship v. Metro. Life Ins. Co., 149 F.3d 134, 136 (2d Cir.1998) (emphasis added). In such a case, the introduction of extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence rule. Ocean Cape, supra, 63 N.J.Super. at 377-78, 164 A.2d 607.
Having found that plaintiffs proved by clear and convincing evidence that they justifiably relied upon misrepresentations of income which induced them to enter into the contract, Paster and YIC are liable on plaintiffs' fraud claim. We remand this matter to the trial court for further findings and conclusions consistent with this opinion. The trial judge will be called upon to determine whether YC is liable for the misrepresentations made by YIC and Irene Paster and whether Thomas and MGR Enterprises also should be liable to plaintiffs. Also, we remand to the trial court to make a determination on the issues of damages, punitive damages, counsel fees and costs.
We do not retain jurisdiction.
NOTES
[1] The quotations are from the trial judge's findings of fact which are not contested.
[2] The court also reversed summary judgment for the seller's broker and agents, who also allegedly made misrepresentations to the buyers.