**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0561-23

JOSHUA ABRAMS,

    Plaintiff-Appellant,

v.

RICHARD ISOLDA,

    Defendant-Respondent.

_____

Submitted January 23, 2025 – Decided May 1, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0661-23.

Joshua Abrams, appellant pro se.

Mark J. Molz, attorney for respondent.

PER CURIAM

Plaintiff Joshua Abrams appeals from various trial court orders dismissing his complaint, with prejudice, and awarding defendant Richard Isolda attorney's fees. Applying well-established legal principles, we affirm.

This matter arises from Isolda's legal representation of Abrams's father in a civil litigation between the father and son. In Abrams's complaint, he alleged Isolda:

> [E]ngaged in a pattern of harassment, abuse, and belittlement, while prolonging the litigation for financial gain. [Isolda] also attempted to undermine [Abrams]'s rights and ability to proceed with the civil suit based on [Abrams]'s mental health and disability. [Abrams] claims damages resulting in bankruptcy and unemployment.

The complaint contained counts for: (1) legal malpractice; (2) intentional infliction of emotional distress; (3) fraud; (4) perjury; (5) abuse of process; (6) violation of the Americans With Disabilities Act (ADA); (7) breach of fiduciary duty; (8) negligence; (9) defamation; (10) conspiracy to commit fraud; (11) unjust enrichment; (12) intentional interference with prospective economic advantage; (13) invasion of privacy; and (14) violation of the Centers for Disease Control (CDC) eviction moratorium.

Instead of filing an answer, Isolda moved to dismiss the complaint. The trial court heard the parties' oral arguments on July 7, 2023. On the same day,

the court issued an oral opinion. The court stated Abrams "alleged many causes of action which [we]re either time-barred or which [we]re not legally cognizable causes of action even assuming the allegations in the [c]omplaint [we]re accurate on their face." The court reviewed each count and stated Abrams could not maintain a claim for: (1) legal malpractice, because he admitted there was no attorney client-relationship between himself and Isolda; (2) intentional infliction of emotional distress, because "the allegations d[id] not, . . . rise to the level of outrageous or extreme conduct such as to warrant the viability of th[e] cause of action" and "any interactions that the parties had were in the context of litigation and would be subject to litigation privilege"; (3) fraud, because the allegations in the complaint lacked specificity and were conclusory; (4) perjury, because it was "not a cognizable cause of action"; (5) abuse of process, because, "in addition to failing to present factual allegations that would support the cause of action," the cause of action could not "lie against . . . defendant in this case who was counsel to . . . Abrams'[s] father as opposed to the party initiating and pursuing the action"; (6) violation of the ADA, because Abrams had "not articulated [a] cognizable cause of action with respect to" Isolda; (7) breach of fiduciary duty, because there was no fiduciary relationship between the parties, instead "Isolda was counsel for an adverse party in litigation"; (8) negligence,

3

because the nature of the parties' relationship precluded a finding of negligence; (9) defamation, because the "litigation privilege . . . would preclude" a defamation claim against Isolda; (10) conspiracy to commit fraud, because even "giving [Abrams] . . . the benefit of the broadest reading possible of the allegations . . . the facts that are alleged do[ no]t . . . give rise to a basis for a prima facie claim of conspiracy"; (11) unjust enrichment, because there was no relationship, contractual or otherwise, between the parties; (12) intentional interference with prospective economic advantage, because there was no factual basis and the claim was belied by the fact that Abrams and his father settled the underlying litigation; (13) invasion of privacy, because Isolda's actions on behalf of Abrams's father cannot serve as a basis for any claim; and (14) violation of the CDC eviction moratorium, because it was not a "cognizable cause of action" nor would it lie against Isolda acting as Abrams's father's counsel. The court dismissed all claims with prejudice.

On July 16, 2023, Abrams filed motions "for a new trial" and, on July 27, 2023, Isolda filed a cross-motion for attorney's fees. The motions were scheduled for remote oral argument on August 25, 2023 but Abrams did not appear. The court considered Abrams's motion for a new trial as a motion for reconsideration, because there had been no trial. The trial court stated it was

4

denying the motion, because Abrams's submittal failed to "suggest that the standard for reconsideration ha[d] been met." Instead, the court found Abrams's submittal "basically, [provided] conclusory statements and opinions" and nothing "new or any error of law or fact."

As to the cross-motion, the trial court considered that Isolda served Abrams with the "frivolous pleading notice" "in connection with the original [c]omplaint" and "also in connection with each of [Abrams's] motions" and submitted a "certification of services." While the court found "there [wa]s an appropriate basis for concluding that the pleadings were . . . to some degree frivolous," it also found "perhaps, not . . . all of the alleged causes of action [were frivolous] even though they were all dismissed." Therefore, the trial court decided "to award some fees, not . . . 100 percent of what[ wa]s claimed." The court reserved its decision as to the amount, so it could "review the certification" "and incorporate into it an award based upon the factors in RPC 1.5."[1]

Thereafter, Abrams filed motions for: (1) reconsideration; (2) the recusal of the trial court and for vacatur; and (3) sanctions and removal of Isolda's attorney. In response, Isolda filed motions seeking additional attorney's fees.

---

[1] RPC – Rules of Professional Conduct.

In its order of September 25, 2023, the trial court denied Abrams's motions for: (1) a new trial; (2) reconsideration; (3) recusal; (4) sanctions and removal of Isolda's attorney; and (5) vacatur. The court relied on its oral opinion from August 25, 2023, to deny Abrams's motion for a "new trial."

In a ten-page written opinion, the trial court addressed Abrams's other motions. In denying the motion for recusal, the court noted the disqualification of a judge is governed by Rule 1:12-1 and the Code of Judicial Conduct, canon 3.17. The court found that Abrams "failed to articulate any basis for concluding that disqualification [wa]s necessary to protect the rights of the litigants or to preserve public confidence in the independence, integrity and impartiality of the judiciary." The court found Abrams's "motion for recusal [wa]s [inappropriately] premised upon his disagreement with the court's findings, rather than any allegation of conflict or other basis for disqualification set forth in . . . 3.17." Further, the court stated it did "not find that there [wa]s any reasonable basis to question [its] impartiality."

Moreover, the trial court explained it was denying the motion for sanctions and the removal of Isolda's counsel because Abrams failed to offer "any citation to authority that would permit such a request for relief."

A-0561-23

In addition, the trial court explained it was denying the motion for vacatur, brought under Rule 4:50-1, because Abrams failed "to identify any appropriate basis for vacating the court's prior [o]rders." Instead, Abrams repeated "the same arguments raised in connection with his other applications, which [we]re based upon his dissatisfaction and disagreement with the court's determinations, rather than any of the categories for which relief is available under Rule 4:50-1."

The trial court granted Isolda's motions for additional attorney's fees, under Rule 1:4-8. In the written opinion, the court explained that Isolda "complied with the procedural requirements of Rule 1:4-8." Further, the court noted it had "previously . . . determined that . . . numerous claims asserted in [Abrams]'s [c]omplaint were without merit." Nevertheless, the court stated this time it was "impos[ing] sanctions for frivolous litigation" because of Abrams "repeatedly submitt[ing] duplicative filings after they had been found to be non-meritorious." The court stated the "repeated attempt to re-litigate the same factual and legal issues which had already been rejected by the court multiple times" evidenced "a lack of a reasonable good faith belief in the merits of the action, and which support[ed Isolda]'s argument that [Abrams]'s intention [wa]s

to abuse the legal process to harass [Isolda], and compel him to continue to expend time and resources defending this action."

## I.

On appeal, Abrams contends the trial court committed a number of errors: (1) misapplication of immunity and attorney-client privilege; (2) violations of due process and procedural rights; (3) disregard for ADA protections; (4) overlooking substantive legal arguments and abuse of legal processes; (5) failure to adhere to procedural justice standards; (6) improper imposition of attorney's fees; and (7) the denial of his motion for recusal.

"Appellate review of a trial judge's findings of fact is limited by well-settled principles." Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171, 179 (App. Div. 2012). Factual "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "We also review mixed questions of law and fact de novo."

A-0561-23

Cumberland Farms, Inc. v. N.J. Dep't Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

1.

a.

Abrams contends the trial court erred in dismissing his claim for legal malpractice because of "the perceived absence of a direct attorney-client relationship." He contends the court "negate[d] the well-established principle that the attorney's duty of care extends beyond their immediate clients." He asserts "attorneys might owe a duty to non-clients, which was disregarded" when the trial court granted the dismissal.

"[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.'" Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).

The New Jersey Supreme Court has "recognized that there are circumstances in which an attorney may owe a duty to a third party with whom the attorney does not have a contractual relationship." Banco Popular N. Am.

9

v. Gandi, 184 N.J. 161, 179 (2005).  The existence of that duty "is a question of law to be determined by the court."  Fitzgerald v. Linnus, 336 N.J. Super. 458, 468 (App. Div. 2001).  When an

> attorney[']s actions are intended to induce a specific non-clients reasonable reliance on his or her representations, then there is a relationship between the attorney and the third party.  Contrariwise, if the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship to substitute for the privity requirement.
>
> [Gandi, 184 N.J. at 180.]

Here, we are convinced that Isolda's representation of Abrams's father, in a lawsuit between Abrams and his father, could not have induced a reasonable reliance in Isolda or created a "relationship to substitute for the privity requirement."  Ibid.  Therefore, we affirm the dismissal of the legal malpractice claim.

b.

Abrams contends the trial court erred in dismissing his claims for the intentional infliction of emotional distress and fraud by "conflating the doctrines of immunity and attorney privilege."  He asserts that "immunity does not shield actions outside judicial proceedings or those conducted with malice."

The doctrine of litigation immunity provides:

A-0561-23

[A]n absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto, [it] is a principle firmly established, and is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice.

[Brown v. Brown, 470 N.J. Super. 457, 464 (App. Div. 2022) (quoting Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117 (App. Div. 1957)).]

The existence of the litigation "privilege is a question of law." Hawkins v. Harris, 141 N.J. 207, 216 (1995).

Absent from Abrams's argument is a specific assertion as to Isolda's actions. Nonetheless, we are convinced that Isolda's actions were taken on the father's behalf in the litigation. Therefore, Isolda is entitled to litigation immunity regarding these claims. Thus, we affirm the dismissal of Abrams's claims for intentional infliction of emotional distress and fraud.

### 2.

Abrams contends "[t]he trial court's dismissal of the claims with prejudice, before thoroughly examining the facts or allowing an opportunity to amend pleadings, starkly contravened established due process principles." He asserts the "premature dismissal failed to consider the substantive arguments and

evidentiary support." Further, he "stresses the importance of granting pro se litigants the opportunity to clarify their claims, . . . preserving their right to a fair legal process." In addition, Abrams contends the court's "sidestep[ of] essential procedural steps and silenc[ing of his] voice, infring[ed] upon the due process rights protected under the Fourteenth Amendment."

Undeniably, "we hold [pro se complaints] to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). This standard fits neatly under our analysis of all complaints under Rule 4:6-2(e). Under the Rule,

> the test for determining the adequacy of a pleading: [is] whether a cause of action is "suggested" by the facts. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988). . . . [A] reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957). . . . The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.
>
> [Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989).]

We "review[] de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e)." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). "If a complaint must be dismissed after it has been accorded the . . . meticulous and indulgent examination . . ., then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint." Printing Mart-Morristown, 116 N.J. at 772. "Nonetheless, if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107.

Applying these well-established principles and for the reasons we have expressed in this opinion, we conclude that Abrams's complaint against Isolda, stemming from Isolda's legal representation of Abrams's father, fails to state a claim for relief, and no amount of discovery will alter that conclusion. Therefore, we affirm the dismissal of the complaint with prejudice under Rule 4:6-2(e).

3.

Abrams contends that he "is recognized under the ADA, with documented disabilities." He asserts that his disabilities "necessitat[ed] accommodations . . . to ensure equitable treatment" and "[t]he court's dismissal of ADA claims failed to consider these vital aspects." Further, he argues Isolda's "conduct, . . . contravened the ADA through discriminatory actions, [and] was insufficiently considered in this context."

However, under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a <u>public entity</u>, or be subjected to discrimination by any such <u>entity</u>." 42 U.S.C. § 12132 (emphasis added). "The ADA applies only to public entities . . . ." <u>Lovell v. Chandler</u>, 303 F. 3d 1039, 1052 (9th Cir. 2002).

Therefore, we are convinced that Abrams's claim against Isolda, an individual, "fail[s] to state a claim upon which relief can be granted," <u>R.</u> 4:6-2(e), and affirm the dismissal, with prejudice, of Abrams's ADA claim.

4.

Abrams contends the trial court "fail[ed] to engage with the substantive legal arguments" and "thereby bypass[ed] . . . intricate legal and ethical

14

considerations." He argues "the court's decision reveals a neglect in addressing the nuanced legal arguments related to breach of fiduciary duty, abuse of process, and the overarching implications of [Isolda]'s conduct on the legal and ethical standards governing the legal profession." Further, he asserts Isolda's "approach, particularly through the three separate motions for fees . . . and the voluminous 166-page motion to dismiss . . ., appear[] to have been strategically designed to overwhelm and outmaneuver [Abrams], leveraging the legal system as a tool for undue pressure."

Aside from making these broad assertions, Abrams fails to provide any detail or support for his contentions. Therefore, we conclude these arguments lack sufficient merit to warrant discussion in a written opinion and affirm. See R. 2:11-3(e)(1)(E).

5.

Abrams contends the trial "court's neglect in addressing the pending discovery motion" and his "[m]otion for [r]econsideration . . . signifie[d] a fundamental disregard for procedural justice standards" and the court's "inattention deprived . . . [him] of the foundational right to a fair hearing."

However, as we have stated herein, no amount of discovery would have provided Abrams with "a claim upon which relief could be granted." See R. 4:6-

15

2(e). Moreover, the trial court considered and denied his motion for reconsideration.

6.

In arguing the trial court erred in awarding Isolda attorney's fees, Abrams asserts that the court's decision "undermines the 'American Rule.'" He contends the decision "starkly contravenes established legal safeguards" and ignores "the diverse legal and factual grounds articulated." Moreover, Abrams contends the court "sidestepped" Rule 1:4-8(f), which is intended "to safeguard pro se litigants like [him]self from punitive financial sanctions."

"New Jersey has a strong public policy against the shifting of costs and . . . has embraced that policy by adopting the 'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party." Litton Indus. Inc. v. IMO Indus, Inc., 200 N.J. 372, 404 (2009) (quoting In re Est. of Vayda, 184 N.J. 115, 120 (2005)). Therefore, "a prevailing party may not be granted attorney's fees unless authorized by the parties' contract, court rule, or statute." Ibid. (quoting Rock Work, Inc. v. Pulaski Const. Co., 396 N.J. Super. 344, 350-51 (App. Div. 2007)).

Under Rule 1:4-8,

> The signature of a[] . . . pro se party constitutes a certificate that the signatory has read the pleading,

written motion or other paper. By signing, filing or advocating a pleading, written motion, or other paper, . . . [a] pro se party certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; . . . .
>
> . . . .

(b) Motions for Sanctions.

> (1) Contents of Motion, Certification. An application for sanctions under this rule shall be by motion made separately from other applications and shall describe the specific conduct alleged to have violated this rule. No such motion shall be filed unless it includes a certification that the

17

applicant served written notice and demand pursuant to [R]ule 1:5-2 to the . . . pro se party who signed or filed the paper objected to. The certification shall have annexed a copy of that notice and demand, which shall (i) state that the paper is believed to violate the provisions of this rule, (ii) set forth the basis for that belief with specificity, (iii) include a demand that the paper be withdrawn, and (iv) give notice, except as otherwise provided herein, that an application for sanctions will be made within a reasonable time thereafter if the offending paper is not withdrawn . . . .

. . . .

(f) Applicability to Parties. To the extent practicable, the procedures prescribed by this rule shall apply to the assertion of costs and fees against a party other than a pro se party pursuant to N.J.S.A. 2A:15-59.1.

[(Emphasis added).]

"This [R]ule subjects . . . pro se litigants, . . . to the attorney fee sanction prescribed thereunder." Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 405 (App. Div. 2001) (citing R. 1:4-8(f)). The Rule is "a reminder to pro se parties that they are under the control of the court in the prosecution of their cause, [and] . . . are regarded as lawyers." Ibid.

"[F]ee determinations by trial courts will be disturbed only on the rarest occasions." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). "We review the trial

judge's decision on a motion for frivolous lawsuit sanctions under an abuse of discretion standard." Bove v. AkPharma Inc., 460 N.J. Super. 123, 146 (App. Div. 2019). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

We note "litigation may become frivolous, and therefore sanctionable, by continued litigation over a meritless claim, even if the initial pleading was not frivolous or brought in bad faith." Bove, 460 N.J. Super. at 152. "This is because the 'requisite bad faith or knowledge of lack of well-groundedness may arise during the conduct of the litigation.'" Ibid. (quoting United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 390 (App. Div. 2009)).

Applying these well-established principles, we find no misuse of the trial court's discretion in awarding Isolda attorney's fees. The trial court found Isolda complied with the requirements of the Rule. Further, the court noted Abrams's complaint contained claims that were meritless. In addition, the court found Abrams displayed a lack of good faith by re-filing and re-litigating factual and legal issues that the court had already found were non-meritorious.

7.

Abrams contends "[t]he trial court's denial of the motion for recusal disregard[ed] . . . established criteria" and his motion "precisely articulated grounds that could reasonably lead to questions about the judge's impartiality, including the handling of the discovery motion, the allowance of prejudicial language by [Isolda], and apparent bias in procedural rulings."

"Motions for disqualification must be made directly to the judge presiding over the case." State v. McCabe, 201 N.J. 34, 45 (2010). The motions "are entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." Ibid. "We review de novo whether the proper legal standard was applied." Ibid.

Applying these well-established principles, we conclude the trial court applied the correct Rule and Canon and did not misuse its discretion in denying its recusal.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

20